**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROGER J. GOSSELIN, individually and on behalf of all others similarly situated | |
| Plaintiff | **Civil Action No. 08-CV-05213** |
| v. | |
| FIRST TRUST ADVISORS L.P., HILLIARD LYONS ASSET MANAGEMENT, VALHALLA CAPITAL PARTNERS LLC, FIRST TRUST PORTFOLIOS L.P., FIRST TRUST STRATEGIC HIGH INCOME FUND, FIRST TRUST STRATEGIC HIGH INCOME FUND II, FIRST TRUST STRATEGIC HIGH INCOME FUND III, JAMES A. BOWEN, MARK R. BRADLEY, RICHARD E. ERICKSON, THOMAS R. KADLEC, ROBERT F. KEITH, NIEL B. NIELSON and DAVID M. OSTER | Honorable Samuel Der-Yeghiayan |
| Defendants | |

[*caption continued on next page*]

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE FIRST TRUST INVESTOR GROUP TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

MORGAN J. EVANS, individually and on behalf
of all others similarly situated

        Plaintiff

     v.

FIRST TRUST ADVISORS L.P.,
HILLIARD LYONS ASSET MANAGEMENT,
VALHALLA CAPITAL PARTNERS LLC,
FIRST TRUST PORTFOLIOS L.P., FIRST
TRUST STRATEGIC HIGH INCOME FUND,
FIRST TRUST STRATEGIC HIGH INCOME
FUND II, FIRST TRUST STRATEGIC HIGH
INCOME FUND III, JAMES A. BOWEN, MARK
R. BRADLEY, RICHARD E. ERICKSON,
THOMAS R. KADLEC, ROBERT F. KEITH,
NIEL B. NIELSON and DAVID M. OSTER

        Defendants

**Civil Action No. 08-CV-05378**

Honorable Samuel Der-Yeghiayan

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………1

PROCEDURAL BACKGROUND……………………………………………………3

STATEMENT OF FACTS……………………………………………………………3

ARGUMENT………………………………………………………………………5

I.      THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS……………5

II.     THE FIRST TRUST INVESTOR GROUP SHOULD BE APPOINTED
        LEAD PLAINTIFF …………………………………………………………...6

        A.      The Procedural Requirements Pursuant to the PSLRA…………………………..6

        B.      The First Trust Investor Group Is "The Most Adequate
                Plaintiff"…………...................................................................................8

                1.      The First Trust Investor Group Has Complied With the
                        PSLRA and Should Be Appointed Lead Plaintiff………………………..8

                2.      The First Trust Investor Group Has the Largest Financial
                        Interest…………………………………………………………………9

                3.      The First Trust Investor Group Satisfies the Requirements of Rule
                        23……………………………………………………………………10

                        i.      The First Trust Investor Group's Claims are Typical of the Claims
                                of All the Class Members……………………………………...........11

                        ii.     The First Trust Investor Group Will Adequately Represent
                                the Class…………………………………………………………...12

III.    THE COURT SHOULD APPROVE THE FIRST TRUST INVESTOR GROUP'S
        CHOICE OF LEAD COUNSEL …………………………………………………..13

CONCLUSION………………………………………………………………………14

## PRELIMINARY STATEMENT

The First Trust Investor Group, (or "Movants"),[1] a small, cohesive group of 3 members, submits this memorandum in support of its motion: (1) to consolidate, pursuant to Fed. R. Civ. P. 42, the related securities fraud class actions filed against certain mutual funds offered by First Trust Portfolios L.P. ("First Trust Portfolios"), including shares of the First Trust Strategic High Income Fund (the "FHI Fund"), First Trust Strategic High Income Fund II (the "FHY Fund") and First Trust Strategic High Income Fund III (the "FHO Fund") (collectively referred to as the "Funds"),[2] between July 26, 2005 and July 7, 2008,[3] inclusive (the "Class Period"), against the Funds' adviser, the Funds' sub-advisers, and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("Exchange Act") (collectively, "Defendants"), and on behalf of all persons or entities who purchased or otherwise acquired shares of the Funds issued in connection with the Funds' initial public offerings ("IPOs") seeking to pursue remedies under the Securities Act of 1933 ("Securities Act"); (2) to be appointed Lead Plaintiff in these Actions pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B) and Section 27(a)(3)(B) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B), as amended by Section 101 of the

---

[1] The First Trust Investor Group is compromised of Anthony Duda, Robert A. Valenti on behalf of the Robert Valenti Revocable Trust, and Aaron Wolkstein. Though Movants move together as a group, alternatively, each agrees to have the Court consider their losses individually and appoint any of them, individually, should the Court so desire. *See* Declaration Of Clinton A. Krislov In Support Of The Motion Of The First Trust Investor Group To Consolidate Related Actions; To Be Appointed Lead Plaintiff; And To Approve Proposed Lead Plaintiff's Choice of Counsel ("Krislov Decl."), Exhibits B and C.

[2] The First Trust Investor Group invested in all three Funds.

[3] The related securities fraud class actions in this Court include the following cases: *Gosselin v. First Trust Advisors L.P., et al.*, 1:08-cv-05213 (N.D. Ill.; filed on Sept. 12, 2008) ("*Gosselin*"); and *Evans v. First Trust Advisors L.P., et al.*, 1:08-cv-05378 (N.D. Ill.; filed on Sept. 19, 2008) ("*Evans*") (collectively, the "Action(s)"). For purposes of this lead plaintiff motion, the First Trust Investor Group adopts the Class Period as set forth in both Actions.

Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) for approval of its selection of the law firm of Brower Piven as Lead Counsel for Lead Plaintiff and the Class and the law firm of Krislov & Associates as Liaison Counsel for Lead Plaintiff and the Class.

As described in the Schedule of Transactions and Losses for the First Trust Investor Group attached to the Krislov Decl., at Exhibit B, the Group has suffered losses of approximately $236,020.36 as a result of its members' investments in the Funds offered by First Trust Portfolios during the Class Period. To the best of its knowledge, the First Trust Investor Group sustained the largest loss of any investor seeking to be appointed Lead Plaintiff.

In addition to demonstrating the largest financial interest in the outcome of this litigation, the First Trust Investor Group's members' Certifications evidence their intent to serve as Lead Plaintiff in this litigation, including their cognizance of the duties of serving in that role.[4] The members of the First Trust Investor Group fully understand their duties and responsibilities to the Class, and are willing and able to oversee the vigorous prosecution of these Actions. As provided in the individual Declarations of the members of the First Trust Investor Group, the Group members have conferred with each other, are aware of their responsibilities for serving as Lead Plaintiff in these Actions, and have agreed to coordinate their efforts throughout the course of this litigation. *See* Krislov Decl., Exhibit C. Moreover, the members of the First Trust Investor Group satisfy both the applicable requirements of the PSLRA and Fed. R. Civ. P. 23, and the Group is presumptively the "most adequate plaintiff."

---

[4] The PSLRA authorizes any member or group of members of the putative Class seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii). Copies of the First Trust Investor Group's members' Certifications of their transactions in certain mutual funds offered by First Trust Portfolios during the Class Period are attached as Exhibit A to the Krislov Declaration.

## PROCEDURAL BACKGROUND

Two related cases alleging substantially identical claims for nearly identical classes of purchasers of certain mutual funds offered by First Trust Portfolios are pending in this Court. The first of these Actions, the *Gosselin* Action, was filed on September 12, 2008. Thereafter, one additional Action, the *Evans* Action, was filed in this Court alleging the same or similar claims.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i), on September 12, 2008, the first notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from the notice (November 12, 2008). *See* Krislov Decl., Exhibit D.

The members of the First Trust Investor Group are members of the Class (*see* Krislov Decl., Exhibit A) and they have timely moved within the 60 day period following publication of the September 12, 2008 notice as required for appointment as Lead Plaintiff under the PSLRA.

## STATEMENT OF FACTS [5]

The FHI Fund, the FHY Fund and the FHO Fund are diversified closed-end management investment companies. Their primary investment objective is to seek a high level of current income. They seek capital growth as a secondary objective. The FHI Fund was first offered in July 2005. The initial Registration Statement relating to the fund became effective July 27, 2005. The offering raised $165 million for the closed-end fund managed by the Advisor and Sub-Advisor. On March 28, 2006, First Trust Portfolios accomplished the offering of the FHY Fund, which raised $188 million. The offering was accomplished pursuant to a Registration

---

[5] This Statement of Facts is taken from the allegations stated in the *Gosselin* Complaint.

Statement and Prospectus. On March 28, 2007, First Trust Portfolios accomplished the offering of the FHO Fund, which raised $155 million and was accomplished through a Registration Statement and Prospectus.

The Registration Statements and amendments thereto did not provide sufficient and adequate disclosures concerning the Funds' risks related to their exposure to mortgage-backed, asset-backed and distressed securities and the Funds' liquidity risk. Further, the Registration Statements and amendments thereto failed to disclose that the Funds lacked adequate internal controls to ensure that they would remain in compliance with their restrictions and limitations related to their investment portfolio and strategies and to ensure that they maintained proper hedging techniques to minimize the risks associated with the Funds' portfolio. The Registration Statements provided that the Funds had certain investment restrictions in place, including restrictions that prohibited them from investing more than 25% of their total assets in any one industry, except for certain investment vehicles issued or guaranteed by the United States Government. Shareholders' approval would be needed in order to change this restriction. The Registration Statements additionally provided a breakdown of composition of the Funds, including limitations on the amount, type and grade of investments that the Funds could invest in. The Funds could only invest up to 15% of its total assets in distressed securities. The Registration Statements also indicated that the Funds would employ hedging and other risk management strategies to reduce their exposure to certain types of risk.

Throughout the Class Period, a large portion of the Funds' portfolios was invested in structured finance securities, including securities backed by subprime mortgages to higher-risk borrowers. Investors were not informed of the level of risk associated with the Funds' exposure to mortgage-backed and distressed securities and the Funds' liquidity risk. Investors were

further not informed that the Funds lacked adequate internal controls to ensure that the Funds would remain in compliance with their restrictions and limitations related to their investment portfolios and strategies and to ensure that the Funds maintained proper hedging techniques to minimize the risks associated with the Funds' portfolios.

Beginning in August 2007 and continuing through July 2008, the Funds began to acknowledge the serious deterioration in the Funds' portfolios. As a result of these disclosures, the price of the Funds' shares collapsed. Prior to any negative disclosures, each of the Funds traded within a narrow trading band.

## ARGUMENT

## I.    THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Consolidation of securities class actions is appropriate where, as here, the actions involve common questions of law and fact. Both the Federal Rules of Civil Procedure (*see* FED. R. CIV. P. 42(a))[6] and the PSLRA provide for consolidation of related actions brought under the federal securities laws. Section 21D(a)(3)(B)(iii) of the Exchange Act and Section 27(a)(3)(B)(iii) of the Securities Act address the issue of consolidation of related securities actions:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the Court shall not make the determination [of appointment of lead plaintiff] until after the decision on the motion to consolidate is rendered . . . .

*See* 15 U.S.C. § 78u-4(a)(3)(B)(ii); 15 U.S.C. § 77z-1(a)(3)(B)(ii).

The related Actions are suited for consolidation. The class action complaints are all brought by purchasers of certain mutual funds offered by First Trust Portfolios against the same

---

[6] *See* Fed. R. Civ. P. 42(a): "Consolidation. If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."

Defendants. The complaints allege identical "class periods" and contain similar allegations charging Defendants with making false and misleading statements, and omitting material information concerning the Funds' business, internal controls and financial results during the relevant period.[7] While district courts have significant discretion in determining the propriety of consolidation, they have recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and/or reports. *See Taubenfeld v. Career Educ. Corp.*, No. 03 C 8884, 2004 U.S. Dist. LEXIS 4363, at *3-4 (N.D. Ill. Mar. 19, 2004);[8] *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 219 F.R.D. 343, 348 (D. Md. 2003). Differences between particular defendants, damages, and/or class periods do *not* defeat the appropriateness of consolidation for federal securities cases based upon the same underlying facts. *See In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000). Therefore, this Court should consolidate the related Actions.

## II. THE FIRST TRUST INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a strict, detailed procedure for the selection of the Lead Plaintiff to oversee a securities class action. *See* 15 U.S.C. § 78u-4(a)(3); 15 U.S.C. § 77z-1(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the proposed class informing class members of their right to file a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i). Plaintiff in the first-filed *Gosselin* Action published a notice on *Business Wire* on September 12,

---

[7] This information is based on the review of the complaints in the above-identified Actions available on PACER at the time of the filing of this Motion.

[8] All cited unreported cases are attached hereto in the Compendium of Unreported Cases.

2008. *See* Krislov Decl., Exhibit D.[9]  This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than 60 days from the date of the press release, which would be November 12, 2008.  Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. § 78u-4(a)(3)(A) and (B); 15 U.S.C. § 77z-1(a)(3)(A) and (B).

Next, the PSLRA requires that within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i).  In making this determination, the statute directs the Court to the following objective criteria:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa)  has either filed the complaint or made a motion in response to a notice . . . .
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

---

[9] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service."  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-cv-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

**B.**    **The First Trust Investor Group Is "The Most Adequate Plaintiff"**

      **1.**    **The First Trust Investor Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

The First Trust Investor Group moves this Court to be appointed Lead Plaintiff and has timely filed the instant Motion to be appointed Lead Plaintiff within the 60-day time period requirement. The plaintiff in the first-filed action published notice on *Business Wire*, a national business-oriented wire service, on September 12, 2008. Accordingly, the First Trust Investor Group meets the requirements of 15 U.S.C. § 78u-4(a)(3)(A) and (B) and 15 U.S.C. § 77z-1(a)(3)(A) and (B) and has filed its motion by November 12, 2008.

Moreover, the First Trust Investor Group has sustained a loss of approximately $236,020.36 from its investment in the Funds offered by First Trust Portfolios. Further, the members of the First Trust Investor Group have shown their willingness to represent the Class by signing sworn Certifications detailing their investments in the Funds offered by First Trust Portfolios during the Class Period and confirming their willingness to discharge the obligations of class representatives in these Actions. *See* Krislov Decl., Exhibit A. Additionally, each member of the First Trust Investor Group has signed a Declaration (*see* Krislov Decl., Exhibit C) demonstrating that they intend to consult with counsel on a regular basis and direct their counsel and the course of the litigation.

Small cohesive groups like the First Trust Investor Group have routinely been appointed as Lead Plaintiff in securities class actions, when they have shown the Court their ability to effectively manage the litigation. *See Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001); *see also Schulman v. Lumenis, Ltd.*, 02 Civ. 1989 (DAB), 2003 U.S. Dist. LEXIS 10348, at *21-22 (S.D.N.Y. June 18, 2003); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C. 1999); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 44-46 (S.D.N.Y. 1998) (allowing three lead

plaintiffs and holding that "the plain language of the PSLRA expressly contemplates the appointment of more than one lead plaintiff"). As one court has succinctly explained regarding an appropriate "group" under the PSLRA:

> This Court does not find it appropriate to limit aggregation when the PSLRA specifically allows for a group of persons to serve as lead plaintiff. There is no requirement contained in the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves. Instead, the PSLRA focuses on whether the person or group that is the proposed lead plaintiff can fairly and adequately serve as the lead plaintiff. Following the PSLRA, this Court focuses not on the composition of the [] group, but rather on whether the group is adequate to serve as lead plaintiff.

*Newman v. Eagle Building Tech.,* 209 F.R.D. 499, 503 (S.D. Fla. 2002). Thus, to determine whether a putative "group" meets the definition of a "group" under the PSLRA, the court's "singular focus will be whether the asserted group has demonstrated the ability to effectively manage the litigation in the interests of the class and direct the litigation without undue influence of counsel." *In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *21-22 (N.D. Cal. Aug. 20, 2001). Therefore, the First Trust Investor Group should be appointed Lead Plaintiff in these Actions.

In addition, the First Trust Investor Group has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm resumes of proposed Lead Counsel, Brower Piven, and proposed Liaison Counsel, Krislov & Associates, are attached as Exhibits E and F, respectively, to the Krislov Declaration.

### 2. The First Trust Investor Group Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant who has the largest financial interest in the relief sought by the action. As demonstrated herein, the First Trust Investor Group, with losses of

approximately $236,020.26, has the largest known financial interest in the relief sought by the Class. *See* Krislov Decl., Exhibit B.

### 3. The First Trust Investor Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii) and 15 U.S.C. § 77z-1(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Mayo v. Apropos Tech., Inc.*, No. 01 C 8406, 2002 U.S. Dist. LEXIS 1924, at *12 (N.D. Ill. Feb. 6, 2002); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005); *Lax*, 1997 U.S. Dist. LEXIS 11866, at *20.

As detailed below, the First Trust Investor Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. The First Trust Investor Group has claims that are typical of those of other Class members and can adequately serve as Lead Plaintiff.

10

i.      **The First Trust Investor Group's Claims Are Typical of the Claims of All the Class Members**

The First Trust Investor Group has claims that are typical of those of other Class members.   Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class."  The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members or when the claims are based on the same legal theory.  *See Dunn v. City of Chicago*, 231 F.R.D. 367, 372 (N.D. Ill. 2005); *Kort v. Diversified Collections Servs., Inc.*, No. 01 C 8406, 2001 U.S. Dist. LEXIS 20988, at *5 (N.D. Ill. Dec. 17, 2001). The requirement that a proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *See Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 500 (N.D. Ill. 1998); *Garner v. Healy*, 184 F.R.D. 598, 603 (N.D. Ill. 1999).

In this case, the typicality requirement is met because the claims of the members of the First Trust Investor Group are identical to, and non-competing and non-conflicting with the claims of the other Class members.  The First Trust Investor Group and all of the Class members purchased Funds offered by First Trust Portfolios and suffered damages as a result of these purchases due to Defendants' misrepresentations and omissions.   Therefore, the First Trust Investor Group's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise."  *Oxford Health*, 182 F.R.D. at 50.  The First Trust Investor Group is not subject to any unique or special defenses.  Thus, the First Trust Investor Group

meets the typicality requirement of Fed. R. Civ. P. Rule 23 because its claims are the same as the claims of the other Class members.[10]

### ii.    The First Trust Investor Group Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z1(a)(3)(B)

The First Trust Investor Group's interests are clearly aligned to those of the other members of the Class. Not only is there no evidence of antagonism between the members of the First Trust Investor Group and the other Class members, but the members of the First Trust Investor Group have a significant, compelling interest in prosecuting the Actions to a successful conclusion based upon the very large financial losses each of its members has suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with the First Trust Investor Group's identical interest with the members of the Class, demonstrates that the First Trust Investor Group will vigorously pursue the interests of the Class. In addition, the First Trust

---

[10] Some courts have previously found in later stages of litigation that plaintiffs lack standing to represent claims related to funds that they did not invest in because they cannot claim to be personally injured by the violations relating to those funds. *See, e.g.*, *Hoffman v. UBS-AG*, No. No. 05 Civ. 6817 (LBS), 2008 U.S. Dist. LEXIS 85065, at *21 (S.D.N.Y. Oct. 22, 2008); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885 (SWK), 2005 U.S. Dist. LEXIS 24263, at *33 (S.D.N.Y. Oct. 19, 2005). This Court can be assured that this will not happen in these Actions if the First Trust Investor Group is appointed as Lead Plaintiff because its members invested in all three Funds and will be able to represent claims against all the Funds.

Investor Group has selected law firms to represent it and the Class that are highly experienced in prosecuting securities class actions.

In sum, because of First Trust Investor Group's common interests with the Class members, its clear motivation and ability to vigorously pursue these Actions, and its competent counsel, the adequacy requirement of Fed. R. Civ. P. Rule 23(a)(3) and (4) are met. Therefore, because the First Trust Investor Group not only meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a) and has sustained the largest amount of losses from Defendants' alleged wrongdoing, the First Trust Investor Group is the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), and it should be appointed as such to lead these Actions.

## III.   THE COURT SHOULD APPROVE THE FIRST TRUST INVESTOR GROUP'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 77-z(a)(3)(B)(iii)(II)(aa).

The First Trust Investor Group has selected Brower Piven and Krislov & Associates to serve as Lead Counsel and Liaison Counsel, respectfully, for the Class. The firms have not only prosecuted complex securities fraud actions, but have also successfully prosecuted many other types of complex class actions as lead and/or class counsel. *See* Krislov Decl., Exhibits E and F. This Court may be assured that in the event the First Trust Investor Group's Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, the First Trust Investor Group respectfully requests that this Court enter an order: (1) consolidating all related actions; (2) appointing the First Trust Investor Group to serve as Lead Plaintiff in these Actions; (3) approving the First Trust Investor Group's selection of Lead Counsel and Liaison Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: November 12, 2008

Respectfully submitted,

**KRISLOV & ASSOCIATES, LTD.**

/s/ Clinton A. Krislov
Clinton A. Krislov
Jeffrey M. Salas
20 North Wacker Drive
Suite 1350
Chicago, Illinois 60606
Telephone: (312) 606-0500
Facsimile: (312) 606-0207

*Counsel for the First Trust Investor Group and Proposed Liaison Counsel for the Class*

**BROWER PIVEN**
  A Professional Corporation
David A.P. Brower
Jessica Sleater
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

**BROWER PIVEN**
  A Professional Corporation
Charles J. Piven
Yelena Trepetin
World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300

*Counsel for the First Trust Investor Group and Proposed Lead Counsel for the Class*