UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER J. GOSSELIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST TRUST ADVISORS L.P., FIRST TRUST PORTFOLIOS L.P., FIRST TRUST STRATEGIC HIGH INCOME FUND, FIRST TRUST STRATEGIC HIGH INCOME FUND II, FIRST TRUST STRATEGIC HIGH INCOME FUND III, JAMES A. BOWEN, and MARK R. BRADLEY,<br><br>Defendants. | Case Number: 08-cv-05213<br><br>Honorable Samuel Der-Yeghiayan |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

Bryan Cave LLP
  Steven R. Smith
  Derek S. Holland
161 North Clark Street, Suite 4300
Chicago, IL 60601-3206

Milbank, Tweed, Hadley & McCloy LLP
  James N. Benedict
  Sean M. Murphy
  Robert R. Miller
  Andrew W. Robertson
1 Chase Manhattan Plaza
New York, NY 10005-1413

*Attorneys for Defendants First Trust Advisors L.P., First Trust Portfolios L.P., First Trust Strategic High Income Fund, First Trust Strategic High Income Fund II, First Trust Strategic High Income Fund III, James A. Bowen, and Mark R. Bradley*

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 3

ARGUMENT ........................................................................................................................ 14

I. PLAINTIFFS CANNOT BRING AN ACTION FOR MISMANAGEMENT UNDER THE FEDERAL SECURITIES LAWS. ............................................................. 15

    A. Allegations of Corporate Mismanagement Are Not Actionable Under the Federal Securities Laws. ............................................................. 15

    B. The Complaint Challenges Defendants' Business Judgments in Investing in and Pricing Mortgage-Related Securities. ........................................ 16

II. PLAINTIFFS FAIL TO ADEQUATELY ALLEGE ANY ACTIONABLE MISREPRESENTATIONS OR OMISSIONS. .................................................... 17

    A. Claims Under the Federal Securities Laws Must Satisfy Stringent Pleading Standards. ............................................................................... 17

        1. The PSLRA and Rule 9(b) Require Plaintiffs to Plead Their Claims with Particularity. ............................................................. 17

        2. The Alleged Misrepresentations and Omissions Must Be Actionable. ............................................................................. 19

    B. Plaintiffs Fail to Allege Particularized Facts Establishing Actionable Misrepresentations or Omissions. ............................................................. 20

        1. Plaintiffs' Disagreement with Defendants' Valuation Assessments Is Not Actionable. ................................................................. 20

        2. Defendants Made Appropriate Disclosures Regarding the Funds' Investment Strategies and Risks. ............................................. 25

        3. Defendants Appropriately Disclosed the Funds' Management Fee Structures. ............................................................................ 29

III. PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER. ............... 30

    A. Plaintiffs Plead No Logical Motive. ...................................................... 30

    B. Plaintiffs Fail to Allege Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness. ............................................................. 31

    C. The Inference that Defendants Acted in Good Faith Is Significantly More Compelling. ........................................................................................ 32

IV.    PLAINTIFFS' CLAIMED LOSSES WERE NOT CAUSED BY THE ALLEGED MISREPRESENTATIONS OR OMISSIONS. ............................................................................. 33

V.    PLAINTIFFS' CLAIMS UNDER THE 1933 ACT AND SECTION 14(A) OF THE 1934 ACT ARE BARRED BY THE APPLICABLE ONE-YEAR STATUTE OF LIMITATIONS. ........................................................................................... 36

      A.    Claims Under the 1933 Act and Section 14(a) Must Be Brought Within One Year After Plaintiff Is on Notice of the Claims. ........................................... 36

      B.    Plaintiffs Were on Notice of Their Claims More Than One Year Before They Filed the Initial Complaint. ........................................................................... 38

VI.    PLAINTIFFS HAD KNOWLEDGE OF THE ALLEGED MISREPRESENTATIONS AND OMISSIONS AT THE TIME THEY PURCHASED SHARES IN THE FUNDS. ............................................................................ 39

VII.    PLAINTIFFS' CLAIMS FOR CONTROL PERSON LIABILITY MUST BE DISMISSED. ............................................................................................................................ 40

CONCLUSION ............................................................................................................................ 40

## **TABLE OF AUTHORITIES**

Page(s)

### CASES

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) .................................................................................................. 14

Basic, Inc. v. Levinson,
   485 U.S. 224 (1988) ................................................................................................. 19, 29

Bastian v. Petren Resources Corp.,
   892 F.2d 680 (7th Cir. 1990) ............................................................................ 33, 34, 36

Beck v. Dobrowski,
   No. 06-C-6411, 2007 WL 3407132 (N.D. Ill. Nov. 14, 2007) ........................ 22, 34, 36

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ...................................................................................................... 14

Benzon v. Morgan Stanley Distribs., Inc.,
   420 F.3d 598 (6th Cir. 2005) ........................................................................................ 19

Borsellino v. Goldman Sachs Group,
   477 F.3d 502 (7th Cir. 2007) ........................................................................................ 18

Cent. Bank, N.A. v. First Interstate Bank, N.A.,
   511 U.S. 164 (1994) ................................................................................................. 19, 39

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002) ........................................................................................... 7

Coronel v. Quanta Capital Holdings Ltd.,
   No. 07 Civ. 1405 (RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ...................... 18

DH2 Inc. v. Athanassiades,
   359 F. Supp. 2d 708 (N.D. Ill. 2005) ........................................................................... 40

DiLeo v. Ernst & Young,
   901 F.2d 624 (7th Cir. 1990) ................................................................................ passim

Duane v. Altenburg,
   297 F.2d 515 (7th Cir. 1962) ........................................................................................ 23

Dura Pharms., Inc., v. Broudo,
   544 U.S. 336 (2006) ...................................................................................................... 33

Eckstein v. Balcor Film Investors, et al.,
   58 F.3d 1162 (7th Cir. 1995) ........................................................................................ 37

Fry v. UAL Corp.,
   895 F. Supp. 1018 (N.D. Ill. 1995) .............................................................................. 15

Gallagher v. Abbot Lab.,
   269 F.2d 806 (7th Cir. 2001) ........................................................................................ 19

Goldberg v. Household Bank, F.S.B.,
   890 F.2d 965 (7th Cir. 1989) ........................................................................................ 20

Grassi v. Info. Res., Inc.,
   63 F.3d 596 (7th Cir. 1995) ..................................................................................... 18, 21

GSC Partners CDO Fund v. Washington,

    368 F.3d 228 (3d Cir. 2004) .................................................................................................... 31

Gustafson v. Alloyd Co.,
    513 U.S. 561 (1995) ................................................................................................................ 39

Haralson v. E.F. Hutton Group, Inc.,
    919 F.2d 1014 (5th Cir. 1990) ................................................................................................ 39

Higginbotham v. Baxter Int'l,
    495 F.3d 753 (7th Cir. 2007) ............................................................................... 19, 28, 30, 31

In re Alliance N. Am. Gov't Income Trust Sec. Litig.,
    No. 95 Civ. 0330, 1996 U.S. Dist. LEXIS 14209 (S.D.N.Y. Sept. 26, 1996) .... 20, 26, 27, 28

In re Axis Capital Holdings, Ltd.,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006) .................................................................................... 18

In re Bally Total Fitness Sec. Litig.,
    No. 04-3530, 2006 WL 3714708 (N.D. Ill. July 12, 2006) .............................................. 30, 32

In re Career Educ. Corp.,
    No. 03-C-8884, 2007 WL 1029092 (N.D. Ill. Mar. 29, 2007) ............................................... 32

In re CIT Group, Inc. Sec. Litig.,
    349 F. Supp. 2d 685 (S.D.N.Y. 2004) .................................................................................... 18

In re Exxon Mobil Sec. Litig.,
    500 F.3d 189 (3d Cir. 2007) ................................................................................................... 37

In re Healthcare Compare Corp. Sec. Litig.,
    75 F.3d 276 (7th Cir. 1996) .................................................................................................... 19

In re Hyperion Sec. Litig.,
    No. 93 Civ. 7179, 1995 WL 422480 (S.D.N.Y. July 14, 1995) ................................. 20, 25, 26

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ..................................................................... 19, 35, 37, 38

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
    289 F. Supp. 2d 429 (S.D.N.Y. 2003) .................................................................................... 33

In re NAHC, Inc. Sec. Litig.,
    306 F.3d 1314 (3d Cir. 2002) ................................................................................................. 37

In re Salomon Analyst Level 3 Litig.,
    373 F. Supp. 2d 248 (S.D.N.Y. 2005) .................................................................................... 21

In re Stac Elec. Sec. Litig.,
    89 F.3d 1399 (9th Cir. 1996) .................................................................................................. 18

Isquith v. Caremark Int'l, Inc.,
    136 F.3d 531 (7th Cir. 1998) .................................................................................................. 15

Kalnit v. Eicher,
    264 F.3d 131 (2d Cir. 2001) .............................................................................................. 30, 31

Kohler v. Kohler Co.,
    208 F. Supp. 808 (E.D. Wis. 1962) ........................................................................................ 21

Ladmen Partners, Inc. v. Globalstar, Inc.,
    07 Civ. 0976, 2008 U.S. Dist. LEXIS 76670 (S.D.N.Y. Sept. 30, 2008) .............................. 18

LaSalle v. Medco Research, Inc.,
    No. 93-C-5381, 1996 WL 252474 (N.D. Ill. May 10, 1996) .................................................. 37

Lentell v. Merrill Lynch & Co., Inc.,
  396 F.3d 161 (2d Cir. 2005).............................................................................. 33, 34, 36

Lerner v. FNB Rochester Corp.,
  841 F. Supp. 97 (W.D.N.Y. 1993)................................................................................ 16

Makor Issues & Rights, Ltd. v. Tellabs, Inc.,
  513 F.3d 702 (7th Cir. 2008) ....................................................................................... 31

Mayer v. Oil Field Sys. Corp.,
  803 F.2d 749 (2d Cir. 1986)......................................................................................... 39

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
  547 U.S. 71 (2006)....................................................................................................... 17

Panter v. Marshall Field & Co.,
  646 F.2d 271 (7th Cir. 1981) ............................................................................... 2, 15, 17

Panther Partners, Inc. v. Ikanos Commc'ns, Inc.,
  538 F. Supp. 2d 662 (S.D.N.Y. 2008).......................................................................... 19

Pugh v. Tribune Co.,
  521 F.3d 686 (7th Cir. 2008) .................................................................................. 28, 40

Ray v. Citigroup Global Mkts., Inc.,
  482 F.3d 991 (7th Cir. 2007) .................................................................................. 33, 34

Ray v. Karris,
  780 F.2d 636 (7th Cir. 1985) ....................................................................................... 15

Rice v. Windsor Indus., Inc.,
  No. 85-C-4196, 1986 WL 2728 (N.D. Ill. Feb. 27, 1986)........................................... 40

Rombach v. Chang,
  355 F.3d 164 (2d Cir. 2004)......................................................................................... 18

Roots Partnership v. Lands' End, Inc.,
  965 F.2d 1411 (7th Cir. 1992) ..................................................................................... 39

Roth v. OfficeMax, Inc.,
  527 F. Supp. 2d 791 (N.D. Ill. 2007)...................................................................... 31, 32

Santa Fe Indus., Inc. v. Green,
  430 U.S. 462 (1977)................................................................................................. 2, 15

Sheppard v. TCW/DW Term Trust 2000,
  938 F. Supp. 171 (S.D.N.Y. 1996) ......................................................................... 23, 26

Shields v. Amoskeag Bank Shares Inc.,
  766 F. Supp. 32 (D.N.H. 1991).................................................................................... 16

Shields v. Citytrust Bancorp, Inc.,
  25 F.3d 1124 (2d Cir. 1990)......................................................................................... 31

Stark Trading v. Falconbridge Ltd.,
  No. 05-C-1167, 2008 WL 153542 (E.D. Wis. Jan. 14, 2008) ..................................... 32

Stavros v. Exelon Corp.,
  266 F. Supp. 2d 833 (N.D. Ill. 2003) ........................................................................... 21

Strougo v. Bassini,
  282 F.3d 162 (2d Cir. 2002)......................................................................................... 29

Tellabs v. Makor Issues & Rights, Ltd.,

127 S. Ct. 2499 (2007) .......................................................................................... 17, 30

Tregenza v. Great Am. Commc'ns Co.,
823 F. Supp. 1409 (N.D. Ill.), aff'd, 12 F.3d 717 (7th Cir. 1993) ........................ 37

Va. Bankshares, Inc. v. Sandberg,
501 U.S. 1083 (1991) ..................................................................................... 18, 22

Vachon v. BayBanks, Inc.,
780 F. Supp. 79 (D. Mass. 1991) ............................................................................ 16

Westinghouse Elec. Corp. v. Franklin,
993 F.2d 349 (3d Cir. 1993) .................................................................................. 37

Whirlpool Fin. Corp. v. GN Holdings, Inc.,
67 F.3d 605 (7th Cir. 1995) ................................................................................... 37

## STATUTES

15 U.S.C. § 77k(a) .................................................................................................. 39
15 U.S.C. § 77k(e) .................................................................................................. 33
15 U.S.C. § 77*l*(a)(2) .............................................................................................. 39
15 U.S.C. § 77*l*(b) .................................................................................................. 33
15 U.S.C. § 77m ..................................................................................................... 36
15 U.S.C. § 77o ...................................................................................................... 40
15 U.S.C. § 78j ....................................................................................................... 39
15 U.S.C. § 78t ....................................................................................................... 40
15 U.S.C. § 78u-4 .................................................................................................... 1
15 U.S.C. § 78u-4(b)(1) .......................................................................................... 17
15 U.S.C. § 78u-4(b)(2) .......................................................................................... 30
15 U.S.C. § 80a-5(b)(1) .......................................................................................... 26
15 U.S.C. § 80a-5(b)(2) .......................................................................................... 27
17 C.F.R. § 240.10b-5 ............................................................................................. 39
Securities Exchange Act of 1933, Section 11 .............................................. 2, 4, 6, 36
Securities Exchange Act of 1933, Section 12(a)(2) ..................................... 2, 4, 6, 36
Securities Exchange Act of 1933, Section 15 ..................................................... 3, 40
Securities Exchange Act of 1934, Section 10(b) ............................................. passim
Securities Exchange Act of 1934, Section 14(a) ............................................ 2, 6, 36, 37
Securities Exchange Act of 1934, Section 20(a) ................................................ 3, 40

## RULES

Federal Rules of Civil Procedure Rule 21(b)(6) ....................................................... 1
Federal Rules of Civil Procedure Rule 8(a) .............................................................. 1
Federal Rules of Civil Procedure Rule 9(b) ................................................. 1, 18, 21
Securities Exchange Act of 1934, Rule 10b-5 ................................................. passim
Securities Exchange Act of 1934, Rule 14a-9 ................................................ 2, 6, 36, 37

Federal Rules of Civil Procedure Rule 12(b)(6) .................................................................. 1
17 C.F.R. § 240.10b-5 ..................................................................................................... 6, 39
17 C.F.R. § 240.14a-9 .......................................................................................................... 6

## OTHER AUTHORITIES

SEC Release No. AS-118, Accounting for Investment Securities by Registered
    Investment Companies, 1970 WL 10502 (Dec. 23, 1970) ............................................... 22, 25
SEC Staff Accounting Bulletin No. 59, 1985 WL 634805 (Sept. 5, 1985) .......................... 22, 25
Ben Logan, The ABX Index: A Pricing Conundrum, Credit, May 1, 2008 .............................. 23
Don't Mark to Markit, The Economist, Mar. 6, 2008 ............................................................... 23

Defendants respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Consolidated Complaint ("Complaint" or "Compl."), pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4.

## PRELIMINARY STATEMENT

Plaintiffs' disappointment with the 2007–2008 performance of the three First Trust Strategic High Income Funds (the "Funds") does not give rise to a cause of action. The Funds' prospectuses and shareholder reports complied with SEC rules and disclosed every material risk of which Plaintiffs complain. The essence of Plaintiffs' complaint is their hindsight view that the Funds should not have invested in mortgage-related securities, which caused the Funds (along with many others in the same market) to experience negative returns during 2007 and 2008. Because these investments were squarely within the Funds' investment policies and properly disclosed, Plaintiffs' claim is really about second-guessing the discretionary decisions of fund management. The federal securities laws, however, govern disclosure, not the management and investment decision-making of which Plaintiffs complain. Plaintiffs may now, with the benefit of hindsight, contend that the Funds could have invested in better performing securities, but that does not amount to a claim for securities fraud.

**The Funds always disclosed their investment strategies, investments in mortgage-related securities, and the corresponding risks.** The Funds' prospectuses disclosed that the Funds would invest primarily in "junk bonds" and that such investments are "speculative," "volatile," and could be "severely affect[ed]" by an economic downturn. The prospectuses identified mortgage-related securities as among the principal types of securities in which the Funds would invest, and that those securities are subject to credit risk from the underlying mortgages and could decrease in value due to adverse developments in the mortgage and housing markets. In addition, the prospectuses stated that that the Funds may employ leverage and other investment strategies that present additional risks, including "magnify[ing] the effect of any losses" in a declining market.

**The Funds disclosed their pricing procedures and promptly recognized the impact of the declining market in 2007 and 2008.** The prospectuses disclosed the Funds' valuation procedures, including explaining that, in certain circumstances, Defendants would be required to assess the "fair value" of the Funds' portfolio securities and that such assessment is an exercise

in discretionary business judgment involving consideration of a variety of factors. Applying these procedures, Defendants began to write-down the value of the Funds' mortgage-related securities in early 2007 as adverse developments in the mortgage and housing markets began to impact the value of those securities.

Against this backdrop, it is readily apparent that Plaintiffs' hindsight claims must be dismissed as a matter of law for the following reasons:

First, all of Plaintiffs' claims must be dismissed because, under clear Supreme Court and Seventh Circuit precedent, allegations of corporate mismanagement cannot serve as the basis for claims under the disclosure and anti-fraud provisions of the federal securities laws. See Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 479 (1977); DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990); Panter v. Marshall Field & Co., 646 F.2d 271, 287-89 (7th Cir. 1981).

Second, even if considered as disclosure or fraud claims, all of Plaintiffs' claims must be dismissed because Plaintiffs do not identify any actionable misrepresentations or omissions. Plaintiffs fail to allege, with the particularity required by federal law, why Defendants' extensive disclosures regarding the Funds' investment strategies, the Funds' investments in mortgage-related securities, the Funds' use of leverage and hedging strategies, and the material risks associated with investments in the Funds were false or misleading. Further, the majority of Plaintiffs' alleged misrepresentations (i) relate to forward-looking statements that are inactionable under the bespeaks caution doctrine or (ii) reflect Defendants' reasonable and honestly held views on matters of judgment or opinion.

Third, Plaintiffs' fraud claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 (the "1934 Act") fail because Plaintiffs do not allege facts creating the necessary "strong inference" that Defendants acted with scienter. Rather, Defendants' disclosures, including disclosures of losses in mortgage-related securities beginning in early 2007, overwhelmingly support the contrary inference that Defendants acted in good faith.

Fourth, all of Plaintiffs' claims must be dismissed because the losses suffered by Plaintiffs were not caused by any alleged misrepresentations or omissions by Defendants. On the contrary, each Fund's share price declined due to the global credit crisis that began in 2007 and caused widespread losses in mortgage-related securities of all types.

Fifth, Plaintiffs' claims under Section 14(a) and Rule 14a-9 of the 1934 Act and Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "1933 Act") are barred by the statute of

limitations because Plaintiffs were on inquiry notice of the Funds' investments in mortgage-related securities and losses on those investments more than one year before they filed suit.

Sixth, three of the four Plaintiffs are precluded from asserting claims under the 1933 or 1934 Acts because they purchased shares of the Funds with knowledge of the alleged misrepresentations and omissions. Specifically, these Plaintiffs purchased shares of the Funds after Defendants disclosed losses on the Funds' investments in mortgage-related securities.

Finally, Plaintiffs' claims for control person liability under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act must fail because the Complaint does not allege that a primary violation of the federal securities laws occurred or that the Individual Defendants exercised control over any other Defendant.

## FACTUAL BACKGROUND

### 1. The Parties

#### a. Plaintiffs and the Proposed Classes

Plaintiffs are investors in three closed-end funds for which First Trust Advisors serves as investment manager:

- Plaintiff Robert Valenti Revocable Trust ("Valenti Trust") acquired shares of the First Trust Strategic High Income Fund (the "FHI Fund") in a series of purchases between October 2006 and June 2008, and partially liquidated its holdings in a series of sales in July 2008. (See Compl. ¶ 25 & Ex. A.)

- Plaintiff Aaron Wolkstein acquired shares of the First Trust Strategic High Income Fund II (the "FHY Fund") in a series of purchases between June 2006 and May 2007. (See id. ¶ 26 & Ex. B.)

- Plaintiff Anthony Duda acquired shares of the FHI and FHY Funds in a series of purchases between June 2007 and October 2007, and partially liquidated his holdings in a sale in June 2008. (See id. ¶ 27 & Ex. C.)

- Plaintiff Compass Recruiting Company ("CRC"), a business entity 100% owned by Duda, acquired shares in the First Trust Strategic High Income Fund III (the "FHO Fund") in a series of purchases between June 2007 and October 2007. (See id. ¶ 28 & Ex. C.)

Plaintiffs purport to sue on behalf of various proposed classes (collectively, the "Proposed Classes"), generally consisting of all persons (subject to certain exclusions) who purchased or otherwise acquired shares of the Funds between July 26, 2005 (or the later initial offering date of the particular Fund) and July 7, 2008 (the "Class Period"). The Proposed

3

Classes apparently are designed to satisfy the particular standing and pleading requirements of the various causes of action asserted.[1]

| Proposed Class | Lead Plaintiff(s) | Definition | Claims |
|---|---|---|---|
| FHY Securities Act Subclass | Wolkstein and Duda | Investors who purchased or otherwise acquired shares of the FHY Fund between 3/28/06 and 7/7/08 (the "FHY Class Period") | Sections 11, 12(a)(2), and 15 of the 1933 Act (Counts I, III, V) |
| FHO Securities Act Subclass | CRC | Investors who purchased or otherwise acquired shares of the FHO Fund between 3/28/07 and 7/7/08 (the "FHO Class Period") | Sections 11, 12(a)(2), and 15 of the 1933 Act (Counts II, IV, VI) |
| FHI DRIP Subclass | Duda | Investors who participated in the FHI Fund Dividend Reinvestment Plan ("DRIP") and received dividend reinvestments between 7/26/05 and 7/7/08 (the "FHI Class Period") | Sections 11, 12(a)(2), and 15 of the 1933 Act (Counts VII, X, XIII) |
| FHY DRIP Subclass | Duda | Investors who participated in the FHY Fund's DRIP and received dividend reinvestments during the FHY Class Period | Sections 11, 12(a)(2), and 15 of the 1933 Act (Counts VIII, XI, XIV) |
| FHO DRIP Subclass | CRC | Investors who participated in the FHO Fund's DRIP and received dividend reinvestments during the FHO Class Period | Sections 11, 12(a)(2), and 15 of the 1933 Act (Counts IX, XII, XV) |
| FHI 14(a) Subclass | Valenti Trust | Investors who purchased or otherwise acquired shares of the FHI Fund during the FHI Class Period | Section 14(a) and Rule 14a-9 of the 1934 Act (Count XVI) |

---

[1] In fact, however, Plaintiffs' Proposed Classes suffer from numerous defects that would preclude class certification. For example, Plaintiffs improperly include in the two "14(a) Subclasses" investors who were not shareholders of record for purposes of the March 2007 proxy vote and, therefore, could not have been misled by or suffered damages from the alleged misrepresentations and omissions in the proxy statement. In addition, any claim based on allegations that the Funds reported inflated values for their holdings of mortgage-related securities would result in conflicts between members of the Proposed Classes. Indeed, investors who sold shares during the Class Period would have benefited from allegedly inflated values at the expense of investors who bought and held their shares through the end of the Class Period because the price of the selling shareholders' shares would have been inflated by the mis-valuation of the Fund's holdings of mortgage-related securities.

4

| FHY 14(a) Subclass | Wolkstein | Investors who purchased or otherwise acquired shares of the FHY Fund during the FHY Class Period | Section 14(a) and Rule 14a-9 of the 1934 Act (Count XVII) |
|---|---|---|---|
| FHI 10(b) Subclass | Valenti Trust and Duda | Investors who purchased or otherwise acquired shares of the FHI Fund during the FHI Class Period | Sections 10(b) and 20(a) and Rule 10b-5 of the 1934 Act (Counts XVIII, XXI) |
| FHY 10(b) Subclass | Wolkstein and Duda | Investors who purchased or otherwise acquired shares of the FHY Fund during the FHY Class Period | Sections 10(b) and 20(a) and Rule 10b-5 of the 1934 Act (Counts XIX, XXII) |
| FHO 10(b) Subclass | CRC | Investors who purchased or otherwise acquired shares of the FHO Fund during the FHO Class Period | Sections 10(b) and 20(a) and Rule 10b-5 of the 1934 Act (Counts XX, XXIII) |

### b. The Funds and Other Defendants

Defendants FHI Fund, FHY Fund, and FHO Fund are all diversified, closed-end management investment companies. Each Fund's stated investment objective is "to seek a high level of current income," with "capital growth" as a secondary objective. (Compl. ¶¶ 31-33.) The Funds focus on investing in below-investment grade debt securities, commonly referred to as "high yield" or "junk" bonds. (See, e.g., Ex.[2] A at 4.) The Funds were initially offered to the public on the following dates:

        FHI Fund      7/26/05
        FHY Fund     3/28/06
        FHO Fund     3/27/07

Defendant First Trust Advisors L.P. ("First Trust Advisors") is an Illinois limited partnership that is a registered investment adviser and serves as adviser and manager of the Funds, as well as other open and closed-end funds and investment products. (Compl. ¶ 30; Ex. A at 32.) First Trust Advisors is responsible for selecting the Funds' sub-advisers;[3] monitoring the

---

[2] References in the form "Ex. __" are to the Declaration of Steven R. Smith in Support of Defendants' Motion to Dismiss the Consolidated Complaint.

[3] The sub-advisers are responsible for the day-to-day management of the Funds' portfolios. Hilliard Lyons Asset Management ("Hilliard Lyons") served as the sub-adviser of the FHI Fund until May 2006. Valhalla Capital Partners, LLC succeeded Hilliard Lyons as sub-adviser to the FHI Fund in May 2006, and served as sub-adviser to the FHY and FHO Funds from their respective inceptions through the end of the Class Period. (Compl. ¶¶ 36-37.)

5

Funds' investment portfolios; managing the Funds' business affairs; and providing certain clerical, bookkeeping, and other administrative services. (Ex. A at 32.)

Defendant First Trust Portfolios L.P. ("First Trust Portfolios") is an affiliate of First Trust Advisors. (Compl. ¶ 29.) The Complaint also names as defendants James A. Bowen and Mark R. Bradley (together, the "Individual Defendants"), who served as trustees and/or officers of the Funds during the Class Period. (Id. ¶¶ 34-35.)

### 2. Plaintiffs' Claims for Alleged Disclosure Deficiencies

Plaintiffs claim that Defendants made false and misleading statements about the Funds' investments in mortgage-related securities in violation of Sections 11 and 12(a)(2) of the 1933 Act, and Sections 10(b) and 14(a) and Rules 10b-5 and 14a-9 of the 1934 Act.[4] See 15 U.S.C. §§ 77k, 77l, 78j, 78n; 17 C.F.R. §§ 240.10b-5, 240.14a-9. Plaintiffs seek to recover losses suffered when the Funds' share prices declined due to the global credit crisis that began in 2007.

Despite a rambling and repetitive complaint of more than 180 pages and 526 paragraphs, Plaintiffs' allegations focus primarily on two issues: (i) Defendants' assessment of the value of the Funds' holdings of mortgage-related securities, and (ii) the risks associated with the Funds' investments in such securities. With respect to valuation, Plaintiffs contend that the Funds' public filings failed to disclose the following alleged facts:

- "Defendants ignored observable market data when calculating the valuation of the Funds' mortgage-related securities . . . in contravention of Generally Accepted Accounting Principles ('GAAP'), SEC Rules, and the Funds' disclosed policies" (id. ¶ 14(a));

- "[t]he Funds lacked effective internal controls to provide reasonable assurances that the Funds would value these securities in accordance with GAAP" (id. ¶ 14(b));

- "[t]he Funds materially overstated the value of their portfolios and NAVs by failing to properly value their investments in mortgage-related securities in contravention of GAAP and SEC Rules" (id. ¶ 14(c));

- "Defendants were motivated to improperly value the Funds' investments in mortgage-related securities and inflate the Funds' NAVs in order to inflate investment advisory fees" (id. ¶ 14(f)); and

- "[b]y inflating the Funds' NAVs, Defendants concealed from investors the true financial condition and value of the Funds, and thus, fundamentally misrepresented the ability of the Funds to make distributions to the Funds' shareholders" (id. ¶ 14(h)).

---

[4]   Plaintiffs also assert claims for control person liability under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act. See 15 U.S.C. §§ 77o, 78t.

With respect to the risks of the Funds' investments in mortgage-related securities, Plaintiffs claim that the Funds failed to disclose that:

- "Defendants inappropriately compounded the risks of the FHI Fund's and FHY Fund's investment strategies by utilizing leverage to buy securities on margin in a falling market, thereby necessitating forced liquidation of assets at low values" (id. ¶ 14(d));

- "Defendants did not 'generally seek' and did not in fact implement effective hedges to mitigate the risks related to the Funds' investments in mortgage-backed securities" (id. ¶ 14(e)); and

- "[t]he Funds lacked effective internal controls to monitor and manage the risks inherent in the Funds' investments in mortgage-related securities" (id. ¶ 14(g)).

Plaintiffs contend that these same misrepresentations and omissions appeared in all of the Funds' public filings during the Class Period, and the Complaint repeats, largely verbatim, the same allegations with respect to each Fund and each disclosure document in support of each of the twenty-three counts in the Complaint. (See, e.g., id. ¶¶ 108, 119 (registration statements and prospectuses); id. ¶ 186 (proxy materials); id. ¶ 275 (Sarbanes-Oxley certifications).)

### 3. The Funds' Disclosures During the Class Period

In connection with their respective public offerings, each Fund filed a registration statement on SEC Form N-2.[5] The registration statements include a prospectus, which is provided to shareholders at the time of purchase (see Ex. A), and a Statement of Additional Information ("SAI"), which is available upon request. (See Ex. B.) The prospectus and SAI for each Fund provide information about, among other things, the types of securities in which the Fund invests; the risks associated with investing in the Fund; the fees paid by the Fund to First Trust Advisors and other entities that provide services to the Fund; and the policies and procedures for valuing the securities held by the Fund. Both the prospectus and the SAI are available online on the SEC's website and the Funds' website at www.ftportfolios.com.

Each Fund also files shareholder reports that include: audited financial statements annually and unaudited financial statements semi-annually; a list of the securities held by the Fund, including the value of those securities; charts showing the distribution of the Fund's holdings across various types of securities; and commentary on the Fund's performance and

---

[5] The Court may consider the Funds' disclosures in deciding this motion because (1) Plaintiffs incorporated them by reference into the Complaint; (2) Plaintiffs relied upon them in drafting the Complaint; and (3) they are publicly available reports filed with the SEC. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

7

outlook. (See, e.g., Ex. E; Ex. F.) In addition, each Fund files a list of its portfolio holdings for the first and third quarters of its fiscal year. (See, e.g., Ex. G.)

The Funds' public filings during the Class Period provided investors a wealth of information about: (a) the Funds' holdings of mortgage-related securities; (b) the Funds' investment strategies and material risks; and (c) the Funds' valuation policies and procedures.

    **a.    The Funds Disclosed Their Holdings of Mortgage-Related Securities.**

The Funds' prospectuses disclosed that the Funds would invest in mortgage-related securities, including mortgage-backed securities ("MBS"), asset-backed securities ("ABS"), and collateralized debt obligations ("CDOs"). (See Ex. A at 4 ("Under normal market conditions, the Fund will invest up to 80% of its managed assets in a wide range of below-investment grade debt securities, including mortgage-backed securities, asset-backed securities, . . . collateralized debt obligations . . . .").)[6] MBS and ABS are interests in pools of other assets, referred to as "collateral," which generate cash flows that are distributed as income to the holders of the mortgage-related securities. MBS are backed by pools of mortgages. (See id. at 18.) ABS frequently are backed by pools of mortgages, but also may be backed by other types of collateral, such as credit card receivables and other consumer debt. (See id. at 19.) CDOs are ABS whose underlying collateral is typically a portfolio of bonds or bank loans. (See id.)

The Funds disclosed their holdings of mortgage-related securities for the first and third quarters on Form N-Q and semi-annually in their shareholder reports filed with the SEC on Form N-CSR. These reports were also available on the Funds' website at www.ftportfolios.com. The disclosures grouped the Funds' holdings by type of asset, including CDOs and MBS, and showed the percentage of the Funds' holdings represented by each group. (See, e.g., Ex. E at 3-9; Ex. G at 1-9; Ex. H at 4-9.) Appendices 5-7 show the Funds' holdings of mortgage-related securities as a percentage of the Funds' Total Assets throughout the Class Period.

    **b.    The Funds Disclosed Their Investment Strategies and Risks.**

The prospectuses also disclosed the material risks associated with the Funds' investment strategies generally and specifically with respect to the Funds' investments in mortgage-related securities. The prospectuses warned that "[t]here can be no assurance that the Fund's investment

---

[6] See also Ex. M at 4 ("Under normal market conditions, the Fund will invest in a wide range of securities, including, but not limited to, mortgage-backed securities, asset-backed securities, . . . collateralized debt obligations . . . ."); Ex. U at 4 ("Under normal market conditions, the Fund will invest at least 25% of its total assets in residential mortgage-backed securities.").

objectives can be achieved," the Fund's "investment techniques and risk analyses in making investment decisions [may not] produce the desired results," and fund shareholders potentially could lose the "<u>entire principal amount</u>" of their investments. (Ex. A at 8 (emphasis added).)

The prospectuses disclosed that the Funds would invest primarily in below-investment grade debt securities, commonly referred to as "high yield" or "<u>junk</u>" bonds, and that such securities "are considered <u>speculative</u> with respect to the issuer's capacity to pay interest and repay principal." (<u>Id.</u> at 4 (emphasis added).) The prospectuses emphasized that "market values for high-yield securities tend to be very volatile" and that such securities are subject to additional risks, including:

> [i] increased price sensitivity to changing interest rates and to a deteriorating economic environment; [ii] greater risk of loss due to default or declining credit quality; [iii] adverse company specific events are more likely to render the issuer unable to make interest and/or principal payments; and [iv] a negative perception of the high-yield market may depress the price and liquidity of high-yield securities.

(<u>Id.</u> at 8.) The prospectuses further disclosed that "[a]n economic downturn could severely affect the ability of highly leveraged issuers to service their debt obligations or to repay their obligations upon maturity." (<u>Id.</u> at 9.)

Specifically with respect to mortgage-related securities, the prospectuses disclosed that MBS "are subject to the credit risk associated with the performance of the underlying mortgage properties," and that the value of MBS could be affected by changes in interest rates, as well as "shifts in the market's perception of issuers and regulatory or tax changes adversely affecting the mortgage securities markets as a whole." (<u>Id.</u> at 26; <u>see also id.</u> at 18-19.) With respect to ABS, the prospectuses disclosed that "[p]ayment of interest and repayment of principal . . . may be largely dependent upon the cash flows generated by the assets backing the securities," and that the value of ABS "may also be affected by the creditworthiness of the servicing agent for the pool, the originator of the loans or receivables or the entities providing the credit enhancement." (<u>Id.</u> at 26; <u>see also id.</u> at 19.) Finally, with respect to CDOs, the prospectuses stated that "[i]nvestors in CDOs bear the credit risk of the underlying collateral" and that "scheduled payments to senior [and mezzanine] tranches . . . take precedence over those to subordinated/equity tranches." (<u>Id.</u> at 19.)

9

The prospectuses also explained that the Funds employ a "value" investment strategy, which focuses on securities that "the Sub-Adviser believes are undervalued or inexpensive relative to other investments," based on the sub-adviser's evaluation of the "issuer's business and economic fundamentals or the security's current and projected credit profile, relative to current market price." (Id. at 25) As such, the prospectuses explained, the Funds were "subject to the risk of misestimating certain fundamental factors," as well as the risk that "[d]isciplined adherence to a 'value' investment mandate during periods in which that style is 'out of favor' [could] result in significant underperformance relative to overall market indices and other managed investment vehicles." (Id.)

The prospectuses provided that the Funds may, <u>but are not required to</u>, use strategic transactions, such as hedging, to facilitate portfolio management and mitigate risks. (Id. at 6.) The disclosures cautioned that "[a]lthough the Sub-Adviser seeks to use [Strategic Transactions] to further the Fund's investment objectives, no assurance can be given . . . that these practices will achieve this result." (Id. at 22.) The prospectuses further disclosed that "Strategic Transactions have risks . . . [and] the ability to successfully use Strategic Transactions depends on the Sub-Adviser's ability to predict pertinent market movements, which cannot be assured. Thus, the use of Strategic Transactions may result in losses greater than if they had not been used." (Id.; see also id. at 34-36; Ex. B at 23-29.)

Finally, the prospectuses stated that the Funds "may use leverage for investment purposes, to finance the repurchase of its Common Shares and to meet cash requirements." (Ex. A at 22; see also Ex. M at 2.) The prospectuses explained that "[l]everage is a speculative technique," "there are special risks and costs associated with the [use of] leverage," and "[t]here can be no assurance that a leveraging strategy will be successful during any period in which it is employed." (Ex. A at 2.) The prospectuses warned that leverage "creates a greater risk of loss" (id. at 6), and "can magnify the effect of any losses." (Ex. M at 13.)

c. **The Funds Disclosed Their Valuation Policies and Procedures.**

Each Fund calculates its Net Asset Value ("NAV") on a daily basis. A fund's NAV is the sum of the value of all of the securities and other assets held by the fund, less any liabilities and expenses, and is frequently expressed on a per-share basis. (See Ex. A at 34.) The Funds' daily NAVs are available on www.ftportfolios.com, as well as in major newspapers and on other financial websites.