### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ROGER J. GOSSELIN, Individually and** | ) | |
| **On Behalf of All Other Similarly Situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 08 C 5213** |
| | ) | |
| **FIRST TRUST ADVISORS L.P., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>MEMORANDUM OPINION</u>

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, we deny the motion to dismiss in its entirety.

### BACKGROUND

Plaintiffs are various classes of investors that purchased or otherwise acquired shares of mutual funds offered by Defendant First Trust Portfolios L.P. (FTP), including shares of Defendant First Trust Strategic High Income Fund (FHI Fund), First Trust Strategic High Income Fund II (FHY Fund), and Defendant First Trust Strategic High Income Fund III (FHO Fund) (collectively referred to as "Funds"). Defendant First Trust Advisors (First Trust) serves as the investment manager for the Funds. Plaintiffs contend that the Funds invest a significant amount of their managed

1

assets in "high-yield" or "junk bonds."  (Cons. Compl. Par. 7).  According to

Plaintiffs, such investment strategies heighten the risks of loss and investors do not

have the capacity to monitor such risks.  Such investors allegedly rely on the Funds'

management to place sufficient controls in place to monitor and manage the

heightened risks.  Throughout the class period, Defendants allegedly falsely

represented that they had sufficient internal controls in place to monitor and manage

the risks of the Funds' investments.  Defendants allegedly invested in extremely

risky areas and incurred losses due to their lack of controls to monitor and manage

the risks.  Defendants then allegedly inflated the valuation of the net asset values

(NAV) of the mortgage-related securities to conceal the impact of the investment

losses.  Defendants also allegedly disseminated false and misleading

Prospectus/Registration Statements and annual, semi-annual, and quarterly reports

regarding the NAV of the Funds.  Defendants allegedly failed to perform good faith

valuations of the Funds' investments and as a result the Funds' shares traded at

artificially inflated prices.  The Funds' value allegedly rapidly decreased in 2007 and

Defendants allegedly failed to respond with a proper defensive strategy.  Instead,

Defendants allegedly recommended to shareholders to increase their exposure to the

riskiest types of residential mortgage-backed securities.  As a result of Defendants'

alleged misconduct, Plaintiffs allegedly lost substantial amounts of money.

Plaintiffs include in their consolidated class action complaint claims alleging

violations of Section 11 (Section 11) of the Securities Act of 1933(Securities Act),

15 U.S.C. § 77k (Counts I-II), claims alleging violations of Section 12(a)(2) (Section

12(a)(2)) of the Securities Act (Counts III-IV), claims alleging violations of Section

15 (Section 15) of the Securities Act (Counts V-VI), claims alleging violations of

Section 11 (Counts VII- IX), claims alleging violations of Section 12(a)(2) (Counts

X-XII), claims alleging violations of Section 15 (Counts XIII-XV), claims alleging

violations of Section 14(a) (Section 14(a)) of the Securities Exchange Act of 1934

(Exchange Act) and Rule 14a-9 (Counts XVI-XVII), claims alleging violations of

Section 10(b) (Section 10(b)) of the Exchange Act and Rule 10b-5 promulgated

thereunder (Counts XVIII-XX), and claims alleging violations of Section 20(a)

(Section 20(a)) of the Exchange Act for the FHI Fund (Counts XXI-XXIII).

Defendants move to dismiss all claims.


## LEGAL STANDARD

In ruling on a motion to dismiss, a court must "take all of the factual

allegations in the complaint as true" and make reasonable inferences in favor of the

plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Thompson v. Ill. Dep't of

Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).  To defeat a motion to dismiss

brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)

(emphasis in original)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)); *Hecker v. Deere & Co.*, 569 F.3d 708, 710-11 (7th Cir. 2009)(stating

that "*Iqbal* reinforces *Twombly*'s message that '[a] claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'")(quoting in part *Iqbal*, 129 S.Ct. at 1949).  A plaintiff is not required to "plead facts that, if true, establish each element of a 'cause of action. . . .'"  *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later").

## DISCUSSION

### I.  Corporate Mismanagement

Defendants argue that Plaintiffs merely contend that Defendants mismanaged the Funds and that the entire complaint should be dismissed because allegations of corporate mismanagement are not actionable under federal securities laws. Generally, absent some sort of deception, misrepresentation, or purposeful omission, the federal securities laws do not protect investors from mismanagement of investments or poor business judgment.  *See Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 474, 479-480 (1977)(stating that "the transaction, if carried out as alleged in the complaint, was neither deceptive nor manipulative and therefore did not violate either § 10(b) of the Act or Rule 10b-5")(quoting *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971) for the proposition that "Congress

4

by s 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement"); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)(stating that "[s]ecurities laws do not guarantee sound business practices and do not protect investors against reverses").  In the instant action, however, Plaintiffs have alleged more than a displeasure with Defendants' business judgment and management of the Funds.  Although the Plaintiffs contend that Defendants used poor business judgement, Plaintiffs also contend that Defendants engaged in deception through material misrepresentations and omissions to conceal the ramifications of Defendants' alleged misconduct.  Plaintiffs allege that Defendants made "untrue statements of material fact" (Cons. Compl. Par. 275-76, 282, 292, 303, 311, 388, 398, 408, 443, 462, 479, 496, 510), disseminated reports that were "materially false and misleading" (Cons. Compl. Par. 209-10, 226, 242, 441, 460), and provided a Registration Statement that was "inaccurate and misleading." (Cons. Compl. Par. 282, 292).

Plaintiffs also allege Defendants "represented that the Funds had systems in place to ensure compliance with legal and regulatory requirements that relate to the Funds' accounting and financial reporting," but that "[i]n fact, contrary to Defendants' representations, the Funds lacked adequate systems to ensure compliance and intentionally or recklessly ignored the risks inherent in their portfolios."  (Cons. Compl. Par. 8).  Plaintiffs also contend, for example, that Defendants "concealed" the failure of a reckless investment strategy "by utilizing improper accounting for mortgage-related investments to hide losses and inflate each

5

of the Funds' NAV during the Class Periods." (Cons. Compl. Par. 9). Another

example of an alleged misrepresentation by Defendants was that "[i]n the July 9,

2007 FHI Fund Semi-Annual Report rather than admit the deterioration in the value

of the FHI Fund's mortgage-related securities, Defendants deceptively tried to

differentiate FHI Funds' portfolio from the 'trouble' in sub-prime mortgages."

(Cons. Compl. Par. 189). Defendants also allegedly "inflated the valuation of the

mortgage-related securities during the respective class periods in order to conceal the

impact" of their poor business decisions. (Cons. Compl. Par. 11). Plaintiffs also

allege omissions by Defendants. For example, Plaintiffs allege that due to the nature

of the Funds' investments, it would be expected that the funds had controls in place

to manage and monitor the inherent risks and Defendants represented they had such

controls, but that "[t]he Funds did not inform their investors of the absence of

adequate controls to manage and monitor the risk inherent in th[e] mortgage-related

securities. . . ." (Cons. Compl. Par. 8, 11). Thus, based on the allegations in the

consolidated complaint, Plaintiffs' case at the pleadings stage does not rest merely on

the issue of whether Defendants mismanaged the Funds and used poor business

judgment. We note however, that we are merely ruling based on the pleadings at this

juncture. It remains to be determined after discovery whether there is sufficient

evidence to justify Plaintiffs' allegations of deception and to assess whether

Plaintiffs' case merely rests on a dissatisfaction with the outcome of Defendants'

investment decisions.

## II.  Pleading Misrepresentations or Omissions with Particularity

Defendants contend that Plaintiffs' claims must be pled with particularity and Plaintiffs have not pled with the required specificity.

### A.  Heightened Pleading Standards for Claims

Defendants contend that Plaintiffs' Exchange Act claims are subject to the pleading requirements of the Private Securities Litigation Reform Act (PSLRA) and that Plaintiffs' Securities Act claims are subject to the heightened pleading standard in Federal Rule of Civil Procedure 9(b) (Rule 9(b)).  Pursuant to 15 U.S.C. § 78u-4 (b)(1) of PSLRA, "[i]n any private action arising under th[e] chapter in which the plaintiff alleges that the defendant-- (A) made an untrue statement of a material fact; or (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4 (b)(1). Pursuant to Rule 9(b), fraud must be pled with particularity, which requires a plaintiff to plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.*, 536 F.3d 663,

668 (7th Cir. 2008)(internal quotations omitted); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)(stating in a securities litigation case that Rule 9(b) requires a plaintiffs to plead "the who, what, when, where, and how: the first paragraph of any newspaper story"). The heightened pleading requirement in Federal Rule of Civil Procedure 9(b) "applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations" and whether the claim "'sounds in fraud'-in other words, one that is premised upon a course of fraudulent conduct-can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). In the instant action, Plaintiffs' Exchange Act claims are subject to the heightened pleading requirements in PSLRA. Additionally, as indicated above, with the examples of Defendants' alleged deception, misrepresentations and omissions, Plaintiffs' Securities Act claims clearly sound in fraud and must therefore be pled with particularity pursuant to Rule 9(b).

### B.  Specificity of Allegations

Defendants contend that Plaintiffs have not alleged any actionable misrepresentations or omissions that would satisfy the pleading standards. Defendants contend that to be actionable, the alleged misrepresentations must be material, that any alleged omissions must be based on a duty to disclose, and that Plaintiffs cannot rely on hindsight to show that the statements were misleading or that the statements omitted material information. Defendants contend that the Funds'

public filings provided information concerning the Funds' holdings in mortgage-related securities, the Funds' investment strategies and material risks, and the Funds' valuation policies and procedures, and that Plaintiffs have not shown any material misrepresentations or omissions in such filings.  However, Plaintiffs have adequately explained when and how the alleged misrepresentations and omissions occurred. Plaintiffs have also adequately pled facts to explain why the alleged acts or omissions were misleading and were part of the alleged fraudulent scheme without relying on hindsight.  Plaintiffs have alleged that it was not merely that Defendants' investments did not work out, but that Defendants purposefully attempted to hide the losses, and increase fees for Defendants, and Defendants gave Plaintiffs false assurances that measures were in place to avoid such losses.

Defendants argue that Plaintiffs' allegations concerning Defendants' valuation assessments do not contain actionable misrepresentations or omissions.  Each of the Funds calculates its NAV on a daily basis.  Defendants contend that Plaintiffs failed to allege how Defendants should have done the valuation assessments so as not to be misleading and failed to specify what the accurate valuations would have been. However, Plaintiffs at the pleading stage are not required to have knowledge of the accurate valuation, even for claims that must be pled with particularity.  The basis of Plaintiffs' action is deception by Defendants.  Plaintiffs cannot be expected to have information regarding valuation at the inception of their action.  After conducting discovery and investigating and uncovering the facts, Plaintiffs will be in a position to have the necessary information for such specific calculations.  Plaintiffs explain in

detail how the Defendants allegedly used the valuation assessments to deceive Defendants and conceal the alleged misconduct.  Plaintiffs also explain that, although Defendants stated that the Funds' financial statements were prepared in conformity with Generally Accepted Accounting Principles (GAAP), Defendants actually used other methods to prepare the statements.  (Cons. Compl. Par. 14).  At this juncture, Plaintiffs' allegations are sufficient.

Defendants also argue that "[a]llegations merely criticizing the timing of a write-down are insufficient to state a claim for fraud."  (Mem. Dis. 21).  Plaintiffs contend that Defendants failed to properly write down the value of the mortgage-related securities in response to negative developments in the mortgage and housing markets, which caused the Funds' NAV to be artificially inflated and caused the Defendants to make misrepresentations concerning the financial condition of the Funds.  Plaintiffs do more in their consolidated complaint than criticize the timing of the Funds' write-downs.  Plaintiffs contend that the write-downs were tied into Defendants' alleged scheme of deception.  Thus, Plaintiffs' reference to the timing of the write-downs for the Funds does not render Plaintiffs' claims inactionable for fraud-based claims.

Defendants argue that Plaintiffs have failed to allege facts that support an inference that Defendants' valuation assessments were a part of a fraudulent scheme. Defendants argue that valuation cannot be the basis of a fraud claim because the valuation is "an exercise in discretionary business judgment involving consideration of a variety of factors."  (Mem. Dis. 1-2).  However, Plaintiffs are not merely

contending Defendants did a poor job in making the valuation assessments. Plaintiffs also contend that Defendants purposefully did the valuation assessments so as to conceal Defendants' misconduct and increase fees.  Thus, Plaintiffs have done more than challenge the accuracy of the valuation assessments and have tied such assessments to the alleged fraud.

Defendants also contend that "Plaintiffs nowhere allege that Defendants knew or believed the resulting valuations were erroneous and they certainly do not allege any particularized facts to support such an inference."  (Mem. Dis. 22).  We disagree. As discussed above, references to Defendants' misrepresentations, omissions and deception included in the consolidated complaint create a strong inference that Defendants did not perform the valuations in good faith.  Further, Plaintiffs specifically allege that First Trust "improperly valued the Funds' investments and inflated each of the Funds'" NAVs, suggesting that valuation inflation was purposefully done as part of the fraudulent scheme laid out in the consolidated complaint.  (Cons. Compl. Par. 6).

Defendants also point to public filings made by Defendants that mention the negative developments in the housing markets and Defendants argue that Plaintiffs erroneously imply that Defendants were unaware of or ignored such developments. Defendants argue that with knowledge of the negative developments in the housing market, Defendants used their business judgment to make investment decisions. However, even if Defendants were aware of the negative developments in the housing market, that does not negate Plaintiffs' allegations that Defendants ignored

11

such factors and performed inflated valuations to mislead Plaintiffs.  Thus, Plaintiffs

have shown at this juncture that the valuation assessments may be actionable.

Defendants also argue that Plaintiffs' contentions concerning Defendants'

failure to appropriately disclose risks presented by the Funds are not actionable.

Defendants contend that Plaintiffs have failed to specifically highlight the exact

representations that were misleading or identify what risks were omitted from

statements.  However, Plaintiffs have provided sufficient facts concerning the alleged

misrepresentations and omissions, and have pointed to portions of the consolidated

complaint that provide examples of details concerning such matters.  (Ans. 20-21).

Thus, Plaintiffs have shown as this juncture that the allegations concerning the

disclosures related to the Funds' investment strategies and risks may be actionable.

Defendants also argue that they appropriately disclosed the Funds'

management and fee structures.  However, Plaintiffs have sufficiently tied their

allegations concerning the Funds' management and fee structures to the alleged

fraud.  Plaintiffs have also alleged sufficient facts with regard to such

misrepresentations.  Finally, Plaintiffs have alleged facts in sufficient detail to

explain how the alleged statements were false, misleading, and used to conceal the

fraud.  At this juncture, we conclude that Plaintiffs have pled their fraud-based

claims with particularity in accordance with the PSLRA and Rule 9(b).  We note that

at the summary judgment stage, Plaintiffs will need to point to sufficient evidence to

support their belief that Defendants' statements were false and misleading.

III.  Scienter

Defendants argue that Plaintiffs failed to plead a strong inference of scienter for the Section 10(b) and Rule 10b-5 claims.  Pursuant to 15 U.S.C. § 78u-4(b)(2) of PSLRA, "[i]n any private action arising . . . in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The required state of mind under PSLRA is "intent to deceive, manipulate, or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)(internal quotations omitted). To determine whether a plaintiff has sufficiently pled scienter, a court must consider the complaint in its entirety and must also take into account plausible opposing inferences.  *Id.*

Plaintiffs have alleged sufficient facts concerning misrepresentations, omissions and deception.  Plaintiffs have also alleged that Defendants had access to information contrary to the information contained in the financial statements they distributed, that Defendants violated GAAP by ignoring market data and incorrectly valuing the Funds' NAV, and that Defendants made false Sarbanes-Oxley certifications.  (Cons. Compl. Par. 14, 272-75).  Considering the totality of the facts pled in the consolidated complaint, Plaintiffs provide a strong inference of scienter. Defendants also argue that Plaintiffs did not adequately plead scienter because they did not plead a logical motive.  However, in *Tellabs*, the Court held that motive is not

13

required to establish scienter.  *Tellabs*, 551 U.S. at 325 (stating that "[w]hile it is true that motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference, we agree with the Seventh Circuit that the absence of a motive allegation is not fatal").  We also note that Defendants argue that the motive put forth by Plaintiffs is "economically irrational."  (Mem. Dis. 31).  However, such an analysis of the merits of Plaintiffs' allegations is not an issue to be resolved at the pleadings stage.  Defendants' arguments concerning scienter are also in large part premature at this juncture in that they challenge the sufficiency of evidence to support scienter.  As Plaintiffs point out, whether there is sufficient evidence to satisfy the scienter requirement is ordinarily a question of fact and not an issue to be decided at the pleadings stage.  Defendants, in fact, ask the court to engage in an analysis of the merits of Plaintiffs' position, arguing that "[t]he inference that Defendants acted in good faith is significantly more compelling."  (Mem. Dis. 32).  However, at the pleading stage, it is Plaintiffs, the non-movants, that are entitled to have facts construed in their favor.  *Thompson*, 300 F.3d at 753.  Additionally, it is premature to make an assessment regarding the merits of the allegations.  Thus, Plaintiffs have satisfied the scienter pleading requirement.

## IV.  Causation

Defendants argue that Plaintiffs did not adequately plead loss causation.  To establish loss causation, a plaintiff must show that its loss was not a result of an industry-wide downturn.  *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 685 (7th

Cir. 1990)(stating that "[i]f the plaintiffs would have lost their investment regardless

of the fraud, any award of damages to them would be a windfall").  Showing that a

plaintiff paid a higher purchase price can be sufficient to establish economic loss.

*See, e.g., Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  To

establish economic loss at the pleadings stage, a plaintiff need only satisfy Federal

Rule of Civil Procedure 8(a) and provide "a short and plain statement of the claim

showing that the pleader is entitled to relief,"  *Id.* at 346; Fed. R. Civ. P. 8(a), and

provide the defendant with adequate notice of the basis for causation.  *Dura*, 544

U.S. at 346.

The claims under the Securities Act do not require that proof of loss causation

be pled as an element of the claim.  *See, e.g.*, 15 U.S.C. § 77k; 15 U.S.C. § 77l.  A

showing of negative causation can be asserted as an affirmative defense for certain

Securities Act claims.  *See, e.g.*, 15 U.S.C. § 77k(e); 15 U.S.C. § 77l(b);  *Endo v.

Albertine*, 863 F.Supp. 708, 734 n.1 (N.D. Ill. 1994)(stating that "loss causation is an

affirmative defense under § 11(e), not an element of a § 11 claim"); *Premier Capital

Management, LLC v. Cohen*, 2008 WL 4378300, at *14 (N.D. Ill. 2008)(indicating

that loss causation is an affirmative defense under 15 U.S.C. § 77l).  However,

Plaintiffs' consolidated complaint, which is at issue for the purposes of ruling on the

instant motion, does not suggest such negative causation.  Defendants will therefore

have to rely on a negative causation argument, if appropriate, at a later stage in the

litigation.  Proof of loss causation is also an element that must be proved for Section

10(b) claims.  15 U.S.C. § 78u-4(b)(4).  Specifically, "the plaintiff shall have the

burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." *Id*.; *See also Dura*, 544 U.S. at 347 (stating that "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind").

Plaintiffs alleged in the consolidated complaint that as a result of Defendants' untrue statements, the Funds traded at artificially inflated prices during the relevant time period. (Cons. Compl. Par. 12.)  According to Plaintiffs, the Funds' shares allegedly declined along with the market, but after the Funds made certain disclosures, the value of the Funds' shares substantially declined.  (Cons. Compl. par. 13).  Therefore, Plaintiffs specifically alleged the misleading statements and omissions and Plaintiffs allege that when the truth about these statements was disclosed, the value of their shares substantially declined.  (Cons. Compl. Par. 276-278).  Plaintiffs also alleged that the Funds' share prices suffered across-the-board decreases on July 7, 2008 (Cons. Compl. Par. 278), and Plaintiffs have created an inference that the Defendants' partial disclosures were a substantial reason for those declines.  Therefore, we conclude that Plaintiffs have adequately pled loss causation.

V.  Statute of Limitations

Defendants argue that the Section 11 and 12(a)(2) claims brought under the Securities Act and the Section 14(a) and Rule 14a-9 claims are barred by the statute of limitations.  The Securities Act requires a plaintiff to bring a claim under Sections

11 or 12(a)(2) "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence. . . ."  15 U.S.C. § 77m.  Additionally, an action cannot be brought to enforce liability under Sections 11 or 12(a)(2) "more than three years after the security was bona fide offered to the public. . . ."  15 U.S.C. § 77m.  Similarly, a plaintiff must bring a claim under Section 14(a) of the Exchange Act "within one year after the discovery of the facts constituting the violation and within three years after such violation."  15 U.S.C. § 78i(e); *see also Merine on Behalf of Prudential-Bache Utility Fund, Inc. v. Prudential-Bache Utility Fund, Inc.*, 859 F.Supp. 715, 721 (S.D.N.Y. 1994)(stating that "it is well established that the one-year/three-year limitations period governing claims under §§ 9 and 18 of the 1934 Act, 15 U.S.C. §§ 78i and 78r (1988 & Supp. V 1993), also applies to claims under § 14(a)").

The statute of limitations begins to run when a plaintiff has either actual notice or inquiry notice of the alleged misstatements or omissions.  *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995).  Inquiry notice occurs when a plaintiff has "sufficient information of possible wrongdoing to place [the plaintiff] on 'inquiry notice' or to excite 'storm warnings' of culpable activity."  *In re NAHC, Inc. Securities Litigation*, 306 F.3d 1314, 1325 (3rd Cir. 2002)(internal quotations omitted).  The Seventh Circuit has emphasized that in fraud-based Section 10(b) Securities Act claims, "inquiry notice . . . must not be construed so broadly that the statute of limitations starts running too soon for the victim of the fraud to be able to

bring suit within a year." *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997).

In the instant action, the initial complaint was filed less than three years after the public offering of shares.  (Ans. 37, n. 57.)   Defendants argue that Plaintiffs were on inquiry notice that the Funds invested in mortgage-related securities and that the Funds were experiencing losses as early as August 2007.  (Mem. Dis. 38).  Plaintiffs allege, however, that investors were not made aware of the misstatements or omissions until July 7, 2008, when the FHY Fund reported in the Semi-Annual Report that the Fund's NAV had suffered a 38% decline.  (Cons. Compl. Par. 221-22.).  In addition, Plaintiffs allege that in the July 9, 2007, Semi-Annual Report, "rather than admit the deterioration in the value of the [] Fund's mortgage-related securities, Defendants deceptively tried to differentiate [the] Funds' portfolio from the 'trouble' in sub-prime mortgages."  (Cons. Compl. Par. 189).  Plaintiffs also allege that Defendants concealed "the potentially adverse impact [that] losses in the FHI Fund's underlying mortgage collateral would have on distributions to investors in the FHI Fund."  (Cons. Compl. Par. 205).  Defendants contend that "[c]ourts do not hesitate to dismiss complaints where, on the face of pleadings and documents subject to judicial notice, there were sufficient storm warnings to put plaintiff on notice of his claims more than one year before the complaint was filed."  (Mem. Dis. 37).  However, in this case, the allegations in the consolidated complaint indicate that Plaintiffs were not on inquiry notice at a point that would make their claims

18

untimely.  In making their statute of limitations arguments, Defendants are seeking to contradict allegations in the consolidated complaint.

Plaintiffs also correctly point out that it is generally not appropriate to resolve a statute of limitations issue at the pleadings stage because "[u]nder Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations."  *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006); (Ans. 38).  In the instant action, Plaintiffs have not pled facts that establish that their claims are untimely and we agree with Plaintiffs that there are factual issues concerning the statute of limitations defense that cannot be resolved at this juncture.

## VI.  Knowledge of Alleged Misrepresentations and Omissions

Defendants contend that Plaintiffs' claims should be dismissed based on three of the four named Plaintiffs' knowledge of the alleged misrepresentations and omissions.

### A.  Section 11 and 12(a)(2) Claims

Defendants contend that Plaintiffs cannot recover under Sections 11 or 12(a)(2) since Plaintiffs "had knowledge of the alleged misrepresentations or omissions in the prospectus or sales materials."  (Mem. Dis. 39-40.)  Section 11 provides a cause of action for any person who acquires a security with a misstatement or omission as to a material fact in the registration statement unless "it

is proved that at the time of such acquisition he knew of such untruth or omission."

15 U.S.C. § 77k.  Similarly, Section 12(a)(2) provides a cause of action for a

"purchaser not knowing of such untruth or omission. . . ."  15 U.S.C. § 77l(a)(2).

Defendants contend that Plaintiffs knew of the misstatements or omissions when they

made purchases of the Funds' shares in spite of such loses.  (Mem. Dis. 39-40).

Defendants claim that they had disclosed that the Funds were experiencing losses

during the 2007-2008 time-period but that Plaintiffs made "regular and repeated"

acquisitions of the Funds' shares.  (Mem. Dis. 39-40).  However, as Plaintiffs

correctly point out, Defendants' argument is contrary to the allegations pled in the

consolidated complaint.  Plaintiffs allege facts that show that Plaintiffs did not

become aware of the misstatements or omissions until July 7, 2008.  (Cons. Compl.

Par. 220.)


B.  Section 10(b) and Rule 10b-5 Claims

Defendants contend that Plaintiffs cannot recover under their Section 10(b)

and Rule 10b-5 claims because Plaintiffs cannot assert that they relied on

Defendants' misrepresentations and omissions.  (Mem. 39-40.)  To succeed in a

Section 10(b) and Rule 10b-5 claim, a plaintiff must demonstrate that he relied on the

alleged misrepresentation or omission in acquiring the security.  *Central Bank of

Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 178 (1994); *Basic, Inc. v.

Levinson*, 485 U.S. 224, 243 (1988).  Plaintiff asserts that its reliance can be pled

based on the "fraud on the market" doctrine.  (Ans. 42-43.)  The Supreme Court has

held that "[b]ecause most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247; *see also West v. Prudential Secs., Inc.*, 282 F.3d 935, 937 (7th Cir. 2002)(stating that "[t]he theme of *Basic* and other fraud-on-the-market decisions is that *public* information reaches professional investors, whose evaluations of that information and trades quickly influence securities prices")(emphasis in original).  Plaintiffs allege in their consolidated complaint that investors could not have learned of the truth as to the misrepresentations or omissions until July 7, 2008.  (Cons. Compl. Par. 276-78).  In addition, consistent with *In re Paramalat Sec. Litig.*,  375 F. Supp. 2d 278 (S.D.N.Y. 2005), Plaintiffs allege in their consolidated complaint that the relevant market was "open and developed or, in other words, efficient."  *See id.* at 303; (Cons. Compl. Par. 480, 497, 511).  Since, according to Plaintiffs' consolidated complaint, the misrepresentations or omissions were publicly disseminated (Cons. Compl. Par. 189, 207-10.), the fraud-on-the-market doctrine applies and Plaintiffs can use the doctrine to establish reliance for their  Section 10(b) and Rule 10b-5 claims.


## VII.  Claims for Control-Person Liability

Defendants assert that Plaintiffs' claims for control-person liability must be dismissed because Plaintiffs have failed to adequately plead primary claims and "[n]either Section 15 of the 1933 Act nor Section 20(a) of the 1934 Act provides an independent basis for liability."  (Mem. Dis. 40.)   However, as indicated above,

Plaintiffs have adequately pled a primary violation of the Securities Act and Exchange Act.

Plaintiffs have pled sufficient facts to establish adequate control-person liability.  For example, Plaintiffs brought Count V against Defendants James A. Bowen (Bowen),  Mark R. Bradley (Bradley), and First Trust alleging a violation of Section 15.  (Cons. Compl. Par. 316).  Plaintiffs brought Count VI against Defendants Bowen, Bradley and First Trust alleging a violation of Section 15. (Cons. Compl. Par. 320). Under these counts, Plaintiffs allege that Bowen and Bradley were control persons of the Funds because of their positions as trustees, and First Trust is liable because it was the Funds' investment advisor.  (Cons. Compl. Par. 318, 322). Plaintiffs allege that Bowen's, Bradley's, and First Trust's liability stems from their management positions and ability to control those in management positions. (Cons. Compl. Par. 319, 323).  First Trust's potential liability was further established because First Trust was allegedly responsible for the monitoring of the Funds' portfolio, managing the business affairs, bookkeeping, and clerical services. (Cons. Compl. Par. 318, 322).

In addition, Plaintiffs brought Count XIII against Bowen, Bradley, and First Trust alleging a violation of Section 15.  (Cons. Compl. Par. 414).  Plaintiffs brought Count XIV against Bowen, Bradley, and First Trust alleging violation of Section 15. (Cons. Compl. Par. 418).  Plaintiffs also brought Count XV against Bowen, Bradley, and First Trust alleging a violation of Section 15.  (Cons. Compl. Par. 422).  Under these counts, Plaintiffs allege that Defendants were control persons within the

meaning of Section 15 based on their management positions, access to information, and ability to prevent issuance of misleading statements in FHI's DRIP Registration Statements.  (Cons. Compl. Par. 416, 420, 424.).  Therefore, Plaintiffs have adequately established potential control-person liability because they adequately pled the underlying claims.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion to dismiss in its entirety.


Samuel Der-Yeghiayan
United States District Court Judge


Dated:   December 17, 2009