**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROGER J. GOSSELIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **Case Number:  08-cv-05213** |
| FIRST TRUST ADVISORS L.P., FIRST TRUST PORTFOLIOS L.P., FIRST TRUST STRATEGIC HIGH INCOME FUND, FIRST TRUST STRATEGIC HIGH INCOME FUND II, FIRST TRUST STRATEGIC HIGH INCOME FUND III, JAMES A. BOWEN, and MARK R. BRADLEY, | ) ) ) ) ) ) ) ) ) | Honorable Samuel Der-Yeghiayan |
| Defendants. | ) ) ) | |

**UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF**
**ENTRY OF PRELIMINARY APPROVAL ORDER PERMITTING ISSUANCE OF**
**CLASS NOTICE AND SCHEDULING HEARING ON PROPOSED CLASS ACTION**
**SETTLEMENT AND APPLICATION FOR AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF EXPENSES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

I.      HISTORY OF THE LITIGATION .................................................................................. 4

        A.      Summary of the Claims  .................................................................................... 4

        B.      Procedural History ............................................................................................ 5

        C.      The Settlement ................................................................................................... 7

II.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 8

        A.      The Settlement Has No Obvious Deficiencies................................................... 10

        B.      The Settlement is the Product of Serious, Informed and Non-Collusive
                Negotiations ..................................................................................................... 11

        C.      The Settlement Does Not Grant Preferential Treatment to the Plaintiffs or to
                Segments of the Class or Provide Excessive Compensation to Counsel ..................... 12

III.    THE SETTLEMENT CLASS MAY BE CERTIFIED UNDER RULE 23 ......................... 13

IV.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM  ................. 14

V.      PROPOSED SCHEDULE OF EVENTS........................................................................... 16

CONCLUSION........................................................................................................................ 17

## TABLE OF AUTHORITIES

## FEDERAL CASES

*In re AT&T Mobility Wireless Data Services Sales Litigation*, 270 F.R.D. 330 (N.D. Ill. 2010)..............................................................................................................10, 14, 16

*Amchem Products v. Windsor*, 521 U.S. 591 (1997)........................................13, 14, 15

*Armstrong v. Board of Sch. Directors*, 616 F.2d 305 (7th Cir. 1980)...................8, 9, 10

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ........................................................13

*In re Baldwin-United Corp.*, 105 F.R.D. 475 (S.D.N.Y. 1984) ....................................13

*In re Beef Industrial Antitrust Litigation*, 607 F.2d 167 (5th Cir. 1979).....................13

*Berry v. School District of City of Benton Harbor*, 184 F.R.D. 93 (W.D. Mich. 1998) ...............9

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225 (7th Cir. 1983) .....................14

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)................................................10

*Entin v. Barg*, 412 F. Supp. 508 (E.D. Pa. 1976) .........................................................11

*In re Four Seasons Sec. Laws Litigation*, 58 F.R.D. 19 (W.D. Okla. 1972)................11

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982).......................................................10

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) .......................10

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ....................................................................8

*Liebman v. J.W. Peterson Coal & Oil Co.*, 73 F.R.D. 531 (N.D. Ill. 1973) .................9

*In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379 (D. Md. 1983) ......9

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) ......10

*Philadelphia Housing Authority v. America Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364 (E.D. Pa. 1970)........................................................................................9

*In re Prudential Insurance Co. Sales Prac. Litigation*, 177 F.R.D. 216 (D.N.J. 1997)..............15

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .....................................10

ii

*Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977)................................................14

*Tucker v. Walgreen*, 05-cv-440, 2007 U.S. Dist. LEXIS 74628 (S.D. Ill. Oct. 5, 2007)..............9

*Tumangelova v. Penobscot Corp.*, 09-Civ-4308, 2010 U.S. Dist. LEXIS 74800 (N.D. Ill. July 23, 2010) ........................................................................................................................9

*Uhl v. Thoroughbred Technology & Telecommunications, Inc.*, 309 F.3d 978 (7th Cir. 2002)............................................................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)......................................16

*Whitford v. First National Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) ...........................................10

*Will v. General Dynamics Corp.*, 06-cv-698, 2010 U.S. Dist. LEXIS 95630 (S.D. Ill. Aug. 9, 2010)............................................................................................................................16

## FEDERAL STATUTES

15 U.S.C. §78u-4(a) .......................................................................................................................6

17 C.F.R. § 240.10b-5 ....................................................................................................................6

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

Fed. R. Civ. P. 26(a) .......................................................................................................................6

Robert Valenti Revocable Trust, under Trust Agreement dated 8/3/06, acting through Robert A. Valenti Trustee, Aaron Wolkstein and Anthony Duda (collectively, "Lead Plaintiff") and additional plaintiff Compass Recruiting Company (together with Lead Plaintiff, "Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for entry of the proposed Findings and Order Preliminarily Certifying A Class For Settlement Purposes, Preliminarily Approving Proposed Settlement, Approving Form and Dissemination of Class Notice and Setting Date For Hearing On Final Approval (the "Preliminary Approval Order") that provides, *inter alia*, for (1) preliminarily approval of the proposed class action settlement (the "Settlement") on the terms set forth in the Stipulation and Agreement of Settlement dated March 21, 2011 (the "Stipulation," submitted herewith)[1]; (2) certifying, for settlement purposes only, the Class on whose behalf this Action was brought as a settlement class; (3) approval of the form and methods for providing the Notice of Class Action Settlement (the "Notice") (attached to the Preliminary Approval Order as Exhibit 1), the Proof of Claim and Release form (the "Proof of Claim") (attached to the Preliminary Approval Order as Exhibit 2), and the Summary Publication Notice (the "Summary Notice") (attached to the Preliminary Approval Order as Exhibit 3); (4) designating The Garden City Group, Inc. ("GCG") as the claims administrator; and (5) scheduling a hearing for final approval of the Settlement, the proposed plan of allocation of the proceeds of the Settlement and application of Plaintiffs' counsel for an award of attorneys' fees and reimbursement of litigation expenses.

---

[1] Unless otherwise indicated, all capitalized terms shall be defined herein as in the Stipulation.

**INTRODUCTION**

On March 21, 2011, after an extensive investigation, formal discovery, the exchange of other information, including detailed expert analysis, and multiple face-to-face and telephonic settlement meetings, the parties entered into the formal Stipulation, which, if finally approved by the Court pursuant to Fed. R. Civ. P. 23(e), will resolve the claims of purchasers of the First Trust Strategic High Income Fund ("FHI Fund"), the First Trust Strategic High Income Fund II ("FHY Fund") and the First Trust Strategic High Income Fund III ("FHO Fund") during the respective Class Periods. Under the Settlement, Class Members who file timely and properly completed Proofs of Claim will be entitled to recover up to 100% of their losses stemming from the conduct complained of in this Action from a Gross Settlement Fund of $5,000,000 in cash, plus interest. Plaintiffs' expert has further estimated that, based on the anticipated number of claims that will be filed by Class Members who are eligible to share in the Settlement and do file claims, the Gross Settlement Fund could equal 100% of the estimated compensable damages of claiming Class Members. In addition, the Settlement provides for the further benefit to the Class of Defendants paying up to an additional $150,000 in costs associated with providing notice to the Class and administering the Settlement.

At this time Plaintiffs request only preliminary approval of the proposed Settlement. As part of the preliminary approval process, Plaintiffs, with the consent of Defendants, request certification, for settlement purposes only, of the following Class of First Trust investors:

(1)     All persons or entities who purchased shares of the FHI Fund between July 26, 2005 and July 7, 2008, inclusive;

(2)     All persons or entities who purchased shares of the FHY Fund between March 28, 2006 and July 7, 2008, inclusive; and

(3)    All persons or entities who purchased shares of the FHO Fund between March 28, 2007 and July 7, 2008, inclusive.

In addition, Plaintiffs request leave to mail, by first class United States mail, the Notice to all Class Members who can be reasonably identified from the stock transfer records of First Trust and through brokerage firms, banks and other  nominee or "street name" holders of the subject securities, and to provide the Summary Notice through Internet publication on three separate occasions following the mailing of the Notice (collectively the "Notice Program"), and approval of the methods for providing such Notice Program.  The Notice informs Class Members of the terms of the Settlement; the terms of the plan of allocation of the proceeds of the Net Settlement Fund to claiming Class Members (the "Plan of Allocation"); the maximum amount that Plaintiffs' counsel may request in an award of attorneys' fees and reimbursement of litigation expenses as compensation for efforts in prosecuting the Action and negotiating the Settlement; the maximum amount of expenses that Plaintiffs will seek to have reimbursed for prosecuting the Action; the method by which administration expenses associated with distributing the Settlement Funds will be paid; and the procedures, deadlines and options for opting out of the Class or objecting to the Settlement, Plan of Allocation and/or Plaintiffs' counsel's application for attorneys' fees and reimbursement of litigation expenses.

## ARGUMENT

## I.    HISTORY OF THE LITIGATION

### A.    Summary of the Claims

This Action was brought as a class action against defendants FHI, FHY and FHO (collectively, the "Funds"), the Funds' registrant, First Trust Portfolios L.P. ("First Trust Portfolios"), the Funds' adviser, First Trust Advisors L.P., president of First Trust Portfolio and First Trust, James Allen Bowen, and chief Financial Officer, Controller, and Treasurer of the Funds, the Managing Director and Chief Financial Officer at First Trust Advisors L.P., and the Chief Financial Officer and Managing Director at First Trust Portfolios L.P., Mark Raymond Bradley ("Bradley") (*i.e*., collectively, the "Defendants").

The Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint"),[2] Dkt. No. 92, alleges that Defendants disseminated materially false and misleading prospectuses/registration statements, proxy materials, and annual, semi-annual and quarterly reports.  Specifically, the Complaint alleges that Defendants, beginning at each of the Fund's inceptions and continuing through the respective Class Periods, represented that each Fund's investments were valued daily at market value or, in the absence of a readily identifiable market value, at fair value according to procedures adopted by the Fund's Board of Trustees. However, the Complaint alleges that Defendants actually ascribed their own values to the Funds' portfolios and failed to give effect to the actual value of their mortgage-related securities, ¶237; and that Defendants' valuations also accorded little or no weight to Accounting Series Release ("ASR") 118 or the Funds' own valuation procedures, including considering the general economic conditions affecting the residential sub-prime market in the United States and market

---

[2]  Citations to the Complaint are "¶_."

prices at which identical and similar investments were being sold. ¶240.

Therefore, the Complaint alleges that Defendants calculated net asset values based on inflated values for the Funds' securities portfolios throughout the Class Periods, which, unbeknownst to investors, inflated the Funds' reported advisory fees. ¶¶152, 242. The Complaint also alleges that Defendants made untrue statements during the respective Class Periods concerning the Funds' internal controls and compliance with Generally Accepted Accounting Principles, ¶¶116, 160, 161, 184; the Funds' purported portfolio diversification, hedging practices, use of leverage, and defensive strategies during the Class Periods, ¶¶147-150, 263; and that the Board of Trustees of the FHI and FHY Funds changes to the Funds' stated investment restrictions and policies exposed the Funds' to greater risk. ¶186.

As a result of the foregoing, the Complaint alleges that Defendants violated §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. §78k, and §§ 10(b) and 20(a)of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

### B. Procedural History

On September 12, 2008, the first complaint was filed in this action by Roger J. Gosselin. Dkt. No. 1. On November 12, 2008, Anthony Duda, Robert A. Valenti and Aaron Wolkstein moved, pursuant to 15 U.S.C. §78u-4(a), to be appointed Lead Plaintiff and to approve their choice of Brower Piven, A Professional Corporation, as Lead Counsel for the Class and Krislov & Associates Ltd. as Liaison Counsel for the Class. Dkt. No. 53. On January 15, 2009, over the opposition of another would-be lead plaintiff movant, the Court granted that motion, and appointed Anthony Duda, Robert A. Valenti and Aaron Wolkstein as Lead Plaintiff and approved their choice of class counsel. Dkt. No. 77.

On April 30, 2009, Plaintiffs filed the Complaint. Dkt. No. 92. On June 5, 2009, Defendants moved to dismiss the Complaint, Dkt. Nos. 103-108, 118-19, which this Court denied by a Memorandum Order dated December 17, 2009, Dkt. No. 122.

On February 1, 2010, Plaintiffs and Defendants exchanged Initial Disclosures pursuant to Fed. R. Civ. P. 26(a). *See* Declaration of David A.P. Brower in Support of Unopposed Motion dated March 22, 2011, submitted herewith ("Brower Decl."), at ¶3. On March 10, 2010, Plaintiffs served Defendants with their First Request for Production of Documents and First Set of Interrogatories (together, the "Requests"). Defendants served responses and objections to the Requests on April 9, 2010. *Id.*, at ¶4. On April 19, 2010, counsel for Defendants and Plaintiffs' Lead Counsel participated in a "meet and confer" conference for approximately three (3) hours to discuss deficiencies in Defendants' responses and objections to the Requests. *Id.*, at ¶6. Plaintiffs also served discovery requests on third parties. On April 19, 2010, Plaintiffs served the sub-advisers Valhalla Capital Partners L.L.C. ("Valhalla") and J.J.B. Hilliard, W.L. Lyons LLC ("Hilliard") with discovery requests. On May 5, 2010, Valhalla served its responses and objections, and on May 7, 2010, Hilliard served its responses and objections. *Id.*, at ¶5.

Subsequently, on July 21, 2010, counsel for Defendants and Plaintiffs' Lead Counsel further conferred over Defendants' production of documents responsive to the Requests. *Id.* at ¶6. The discussions were supplemented by the exchange of written correspondence over the next several weeks. *Id.* As a result of those conferences, in addition to the tens-of-thousands of pages of materials Plaintiffs' Lead Counsel had obtained from public sources or through informal means, on September 23, 2010, Defendants produced approximately 10,000 pages of documents, which Lead Counsel reviewed and analyzed thoroughly. *Id.* at ¶7. Applying the information from the document production, on March 8, 2011, Lead Counsel deposed Dave McGarel, the

Chairman of the Pricing Committee of the Funds. *Id.*

Following the extensive fact investigation described above, as well as numerous rounds of negotiations, the parties agreed to the terms of the Settlement and formalized thereafter, again following extensive arm's-length negotiation, the parties prepared the detailed formal Stipulation, including its accompanying forms of notice and orders, and signed the Stipulation on March 21, 2011.

### C.    The Settlement

In full and final settlement of the Released Claims of Class Members, the Stipulation provides for Defendants to pay $5,000,000 in cash into an interest-bearing escrow account for the benefit of the Class. Stipulation, ¶6. The Stipulation also provides for Defendants to pay up to $150,000 more for the benefit of Plaintiffs and the Class towards the costs of the Notice Program and administration of the Settlement.

Plaintiffs and Plaintiffs' counsel submit that the terms of the Stipulation, a copy of which is submitted herewith, are fair, reasonable and adequate and provide an excellent result for the Class, particularly in light of the significant percentage of Plaintiffs' Lead Counsel's estimate of the best possible recovery the Class could obtain, if successful on all issues of liability and damages, represented by the proposed Settlement; the results of Plaintiffs' factual and legal investigation and the strengths and weaknesses of the Class claims; the likely complexity, duration and cost of further litigation; and the risks of continued litigation, including the risk of the Class Members not only recovering less than the Gross Settlement Fund reflected by the Settlement, but recovering nothing.

## II.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996).   The Seventh Circuit provides for a two-step process to approving a settlement.

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."  This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.

*Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  The *Manual for Complex Litigation* further describes the process for approval of a settlement on behalf of a class as follows:

> Approval of class action settlements involves a two-step process.  First, counsel submit the proposed terms of settlement and the court makes a ***preliminary fairness evaluation***.  In some cases this ***initial evaluation*** can be made on the basis of information already known to the court, supplemented as necessary by briefs, motions, or informal presentations by the settling parties. . . .  If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* (3rd ed. 1995) § 30.41 (emphasis added).

Thus, at this stage, the Court is not being asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate as required by Fed. R. Civ. P. 23(e). Instead, at this stage, Plaintiffs are only requesting the Court to decide whether the settlement "appears to fall within the range of possible approval." *Armstrong*, 616 F.2d at 314; *see also Tumangelova v. Penobscot Corp.*, 09-Civ-4308, 2010 U.S. Dist. LEXIS 74800, at *3-4 (N.D. Ill.

July 23, 2010) (approving settlement whose terms "appear[ed] to be within the range of possible approval"); *Tucker v. Walgreen*, 05-cv-440, 2007 U.S. Dist. LEXIS 74628, at *11 (S.D. Ill. Oct. 5, 2007) (preliminarily approving settlement found "to be within the range of reasonableness of a settlement that ultimately could be given final approval by the court").

That preliminary determination is subject to a very low threshold, requiring only that the proposed Settlement is "sufficiently fair and reasonable for submission to members of the prospective class." *Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 374 (E.D. Pa. 1970); *accord Liebman v. J.W. Peterson Coal & Oil Co.*, 73 F.R.D. 531 (N.D. Ill. 1973); *Berry v. School Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court must determine "whether the proposed settlement is potentially approvable"); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (Likening preliminary approval to a finding that there is "probable cause" to submit the settlement to the class and to hold a full-scale final approval hearing). The Court makes this evaluation of preliminary fairness based upon its own knowledge of the case, the briefs, evidence and arguments presented at the time of the preliminary approval request. *Whitford v. First Nat'l Bank*, 147 F.R.D. 135, 138 (W.D. Ky. 1992).

In considering whether a potential settlement is within the range of possible approval, the trial court should not conduct a trial on the merits of the claims and defenses asserted in the action. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). Indeed, the trial court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute. *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974); *overruled on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts have repeatedly recognized that the opinion of counsel in support of a settlement is entitled to considerable weight, *see, e.g.*, *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982); *Armstrong*, 616 F.2d at 325, because of the "unique ability of the class and defense counsel to assess the potential risks and rewards of litigation." *Reed v. Gen Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) (the value of the assessment of able counsel cannot be disputed because counsel "know their strengths and they know where the bones are buried"). And, of course, "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution . . . [which] is especially true in complex class action litigation." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted).

Here, the terms of the Stipulation is within the range of possible approval because: it provides a very substantial recovery to the Class with no obvious deficiencies; was the product of informed, arms-length, non-collusive negotiations; and does not contemplate unreasonable or disproportionate recovery to any segment or members of the Class including no special or different recovery for the class representatives; and leaves the question of the amount of Plaintiffs' counsel's attorneys' fees entirely to the Court's discretion and the applicable case law.

### A. The Settlement Provides a Substantial Recovery to the Class and Has No Obvious Deficiencies

The proposed Settlement satisfies the criteria for preliminary approval. First, it provides a substantial recovery to the class with no "obvious deficiencies" and is fair and reasonable. Under the terms of the Stipulation, Defendants will pay into a fund $5,000,000 for distribution to the Class Members, and will pay up to another $150,000 for notice and administration of the Settlement. Stipulation at ¶¶5-6. Plaintiffs' damages expert has calculated that the most likely amount of recoverable damages at trial, assuming complete victory for Plaintiffs and the Class Members on all issues of liability and damages, would have been $13,700,000. Therefore, the

Gross Settlement Fund equals an approximate recovery of 37% of the highest probable damages that could have been recovered in this Action after a success on the merits and a final, post appeal resolution of the Action. As such, the proposed Settlement is well above the typical range of recoveries in similar cases. *See, e.g.*, *Entin v. Barg*, 412 F. Supp. 508, 515 (E.D. Pa. 1976) (17% of alleged damages and about 1/3 of damages of claim-filing class members was reasonable); *In re Four Seasons Sec. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla. 1972) (class settlement of less than 8% of provable damages was reasonable).

### B. The Settlement Is the Product of Serious, Informed and Non-Collusive Negotiations

The proposed Settlement was achieved through a fair compromise of disputed claims following over two years of litigation and pretrial investigation by Plaintiffs, the completion of substantial expert market, loss causation and damages analyses by Plaintiffs' expert consultants, and several lengthy face-to-face and telephonic rounds of arm's-length negotiations between Class and Defense counsel.

Moreover, counsel for both Plaintiffs and Defendants have extensive litigation experience, particularly in complex securities and class action litigation. The opinion of counsel in support of the Settlement is based on a realistic assessment of the strengths and weaknesses of their respective positions, extensive legal and factual research, as well as substantial discovery, and numerous, lengthy and, at times, heated, debate between the parties regarding the relative risks of proceeding with the litigation through trial and, if a verdict were recovered, through appeal as compared to the certain value of a settlement at this time. Thus, the Settlement, which is now recommended to the Court by Plaintiffs, was achieved between well-informed, highly experienced attorneys vigorously representing their respective clients to the best of their abilities.

### C.     The Settlement Does Not Grant Preferential Treatment to the Plaintiffs or Segments of the Class Or Provide Excessive Compensation to Counsel

The Plan of Allocation treats all similarly situated Class Members the same and is based entirely on the trading prices of the subject securities and the formulas that Plaintiffs were likely to utilize at trial to prove damages to Class Members on the merits.  No group within the Class or Class Member is discriminated against under the terms of the Settlement or the Plan of Allocation.

In addition, the Stipulation provides only that Plaintiffs' counsel may apply to the Court for an award of their attorneys' fees and a reimbursement of their litigation expenses and that the Plaintiffs may apply to the Court, as expressly permitted by the Private Securities Litigation Reform Act of 1995, for reimbursement of their reasonable expenses, including lost wages, in prosecuting the Action.  Stipulation ¶ 10.  Thus, both the attorneys' fees and the expense issues are left ultimately to the Court's discretion and the Stipulation provides no provisions for the amounts that will or should be paid.  Indeed, the Stipulation expressly provides that neither an award of attorneys' fees nor reimbursement of expenses is a condition of the Settlement.

At the time of the final fairness hearing, assuming the Court grants preliminary approval at this time and schedules such a hearing, for many of the reasons discussed above and other reasons that will be discussed in Plaintiffs' filings in support of final approval of the Settlement, Plaintiffs believe they will easily demonstrate that the proposed Settlement not only meets all the requirements of Fed. R. Civ. P. 23(e), but far exceeds those requirements.  For immediate purposes, however, based on the foregoing Plaintiffs submit that the proposed Settlement is well within the range of final approval, and that the Court should grant it preliminary approval.

### III.    THE SETTLEMENT CLASS MAY BE CERTIFIED UNDER RULE 23

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate.'"  *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). The United States Court of Appeals for the Seventh Circuit has acknowledged the propriety of certifying a class solely for purposes of settling a class action.  *See, e.g.*, *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978 (7th Cir. 2002) (affirming certification of class for purposes of settlement only).  Furthermore, the preliminary approval process can be utilized to certify a settlement class when a class has not been previously certified by the Court.  *In re Baldwin-United Corp.*, 105 F.R.D. 475 (S.D.N.Y. 1984).

In the settlement context, class certification criteria are easily met because the class is unified by a common interest in a reasonable recovery.  In fact, courts have viewed the creation of a settlement class as a vehicle to facilitate the amicable resolution of litigation.  *See In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 619 (1997).  In *Amchem*, the United States Supreme Court established that not only is a settlement relevant to class certification, it alleviates the need to address potential management problems that might arise if the case were to be tried.  *Id.*  Here, the Fed. R. Civ. P. 23(a) requirements -- numerosity, commonality, typicality, and adequacy -- are easily met.  *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 341-43.  In this case, the parties have agreed to the certification of three classes of individuals and entities, for settlement purposes only, as defined in the Stipulation, and each Class satisfies the requirements of Fed. R. Civ. P. 23.

*First*, the settlement Class Members here are sufficiently numerous under Rule 23(a)(1). Combined, there are more than 27.6 million outstanding shares in the Funds.  *Second*, purchasers of the Funds' shares satisfy Rule 23(a)(2)'s commonality requirement because the Class

13

Members' injury and damages all arise from the same alleged conduct of Defendants. *Third*, the Plaintiffs' (who are the proposed class representatives) claims are typical of those that could be asserted by other Class Members because they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). *Fourth*, the Plaintiffs will (as they have throughout this Action) adequately represent the Settlement Class because they have no claims antagonistic to those of other Class Members, and they will continue to vigorously protect the interests of Class Members directly and through their experienced and well-qualified counsel. *See Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Therefore, the requirements of Fed. R. Civ. P. 23(a) are clearly met here.

A settlement class is also appropriate here under Rule 23(b)(3). The United States Supreme Court has held that, even in the context of a litigation class, the Rule 23(b)(3) predominance requirement is one easily met in securities actions. *See Amchem*, 521 U.S. at 625. When confronted "with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.*, at 620 (citation omitted). Thus, as here, where the request is for certification of a settlement-only class in a securities action, the requirements of Rule 23(b)(3) are easily met.

Accordingly, the proposed settlement Class here should be certified.

## IV. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM

When a settlement class is certified under Fed. R. Civ. P. 23(b)(3), notice must be provided to all class members who can be identified through reasonable efforts. *See* Fed. R. Civ. P. 23(c)(2)(B). Courts should direct notice "in a reasonable manner to all class members who

would be bound by a proposed settlement, voluntary dismissal or compromise." Fed. R. Civ. P. 23(e)(1)(B). Due process "does not require actual notice, but rather a good faith effort to provide actual notice." *In re Prudential Ins. Co. Sales Prac. Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997).

The proposed Notice, attached as Exhibit 1 to the Preliminary Approval Order, provides detailed descriptions of the Action and the Settlement, as well as information about the options available to Class Members, including the right to object or opt out of the Class and the manner in which to effectuate those choices. The Notice, which will be sent, *inter alia*, to all record shareholders as well as Garden City Group's database of banks, brokers and other nominee purchasers by First Class Mail, also instructs Class Members about the procedures for obtaining recovery, including providing contact information of Lead Counsel and the claims administrator, GCG, and directing Class Members to fill out and return the Proof of Claim, which will accompany the Notice, and that Class Members can also complete the proof of Claim electronically by accessing GCG's website. Further, the Notice informs Class Members that Lead Counsel will seek compensation from the Settlement Fund and the maximum amount they will request. The Notice also describes in detail the Plan of Allocation and the formula that will be used to calculate claims and the methods that will be used to make distributions from the net Settlement Fund. Finally, the Notice highlights the time and place for the final fairness hearing, and informs Class Members of their right to appear personally or through counsel and the requirements for doing so.

Notifications that have included this information have been held to be sufficient under Fed. R. Civ. P. 23(e)(1). *See, e.g., Will v. General Dynamics Corp.*, 06-cv-698, 2010 U.S. Dist. LEXIS 95630, at *17 (S.D. Ill. Aug. 9, 2010) (approving a notice that (i) describes the terms of the settlement; (ii) described the plan of allocation; (iii) described attorneys' fees provisions; (iv)

described payment of administration expenses; (v) notified class of final fairness hearing; and (vi) described methods of objection to the settlement); *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 352 (holding that a notice plan that "calls for informing class members of the Proposed Settlement Agreement, how to object, and how to obtain additional information, among other things" was satisfactory). *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("[T]he settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").

In addition, Lead Counsel will cause to be published the Summary Notice (attached as Exhibit 3 to the Preliminary Approval Order) which provides a brief explanation of the terms of the Settlement, all procedures and deadlines associated with filing a claim or objecting to the Settlement, and informs Class Members where and how to obtain a copy of the full Notice by mail or electronically through the Internet.

In sum, Plaintiffs submit that the proposed Notice program is the best notice practicable under the circumstances and that it fully complies with the requirements of Fed. R. Civ. P. 23 (c) and (e) and due process. Accordingly, Plaintiffs request that the Notice Program be approved.

## V.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the settlement, the parties respectfully ask the Court to establish the following deadlines:

1.     The Notice will be mailed to Class Members within twenty (20) business days after entry of the Preliminary Approval Order;

2.     The Summary Notice will then be published over the Internet on the *Business Wires* the tenth (10th), fifteenth (15th), and twentieth (20th) days after the initial mailing of the

Notice;

3.      Class Members who wish to exclude themselves from the Class or object will have at least sixty (60) days after the initial mailing of the Notice to exercise one of those options; and

3.      The parties will file their papers in support of final approval of the Settlement, final approval of the plan of Allocation and Plaintiffs' counsel's application for an award of attorneys' fees and reimbursement of expenses with the Court no less than fourteen (14) days before the final approval hearing.

Based on the foregoing, assuming the Court grants preliminary approval on or before April 1, 2011, the final approval hearing can be scheduled for any day after August 1, 2011.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully asks the Court to: (1) preliminarily approve the proposed Settlement; (2) preliminarily certify the Class; (3) preliminarily approve the forms of notice to the Class and manner proposed to provide notice to the Class; (4) appoint The Garden City Group, Inc. as the claims administrator; and (5) set a date and time for the hearing regarding final certification of the Class, final approval of the proposed Settlement, final approval of the Plan of Allocation, and consideration of Plaintiffs' counsel's application for an award of attorneys' fees to Plaintiffs' counsel and reimbursement of litigation expenses to Plaintiffs' counsel and the Plaintiffs.

Date:  March 22, 2011

**KRISLOV & ASSOCIATES, LTD.**

By:    s/Clinton A. Krislov
           Clinton A. Krislov
           Jeffrey M. Salas

20 North Wacker Drive
Suite 1350
Chicago, Illinois 60606
Telephone:  (312) 606-0500
Facsimile:  (312) 606-0207

**Liaison Counsel for Plaintiffs**


**BROWER PIVEN,**
  **A PROFESSIONAL CORPORATION**

David A.P. Brower
Caitlin M. Moyna
488 Madison Avenue
Eighth Floor
New York, New York  10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300

**BROWER PIVEN**
  A Professional Corporation
Charles J. Piven
Yelena Trepetin
1925 Old Valley Road
Stevenson, Maryland 21153
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300

**Lead Counsel for Plaintiffs**

18